COMMISSIONERS OF CAMBRIA PARK, A CORPORATION,

*Plaintiff and Appellant,*

vs.

THE BOARD OF THE COUNTY COMMISSIONERS OF WESTON COUNTY, AND YVONNE SEDGWICK AS COUNTY TREASURER OF WESTON COUNTY,

*Defendants and Respondents.*

(No. 2340; November 19th, 1946; 174 Pac. 2d 402)

For the plaintiff and appellant the cause was submitted upon the brief of Raymond & Guthrie of Newcastle, Wyoming.

For the defendants and respondents the cause was submitted upon the brief and also oral argument of E. E. Wakeman of Newcastle, Wyoming.

448

450

## OPINION

RINER, Justice.

The Commissioners of Cambria Park, a Wyoming Corporation, brought an action in the District Court of Weston County, against the Board of The County Commissioners of that county and the County Treasurer thereof, seeking to have certain real property owned by it and leased to the International Pentecostal Assemblies, a corporation existing under the laws of the State of Georgia, and admitted to transact business in Wyoming, usually subsequently referred to as the "lessee," declared exempt from taxation during the time said property has been or will be "used for religious or school purposes" as pleaded in plaintiff's petition. The action sought also to restrain the Weston County Treasurer "from collecting or attempting to collect any taxes assessed against the said property" during that time. The plaintiff corporation may be conveniently herein-

after so mentioned or as the "lessor," and the defendant, the Board of The County Commissioners, simply as the "Board". The judgment, after trial to the court, was adverse to the plaintiff and in consequence it brings the record here for review by direct appeal.

Succinctly the question to be resolved is whether the district court was in error in declining to grant the relief asked under the facts shown by this record. There was an agreed statement of facts filed and presented to the court by the parties supplemented by oral and documentary proofs, and a deposition given by one of the witnesses for the plaintiff. The facts, as we view them and which we regard as material and necessary to be considered to reach a proper disposition of the case, are substantially as follows:

The certificate of incorporation of the lessor was filed in the office of the County Clerk of Weston County about June 12, 1929. It recites that "the purpose for which the association is formed is that set forth in subdivision Twelfth of § 5396, Wyoming Compiled Statutes, 1920". That subdivision reads, "To establish and maintain parks, boulevards, and other pleasure and sanitary resorts". The paragraph of this certificate, numbered "Third", provides that "The stock and property of the association shall be divided into One Thousand (1,000) shares of the par value of One Hundred dollars ($100) each; and the terms upon which such shares of stock shall be held by the members, and the manner in which the same shall be sold and transferred, may be determined by the by-laws". Its paragraph denominated "Seventh" declares that "No dividend shall be declared or paid upon the stock of the Corporation, until final dissolution thereof".

The original cost of erection of the buildings and improvements upon the real estate of the lessor was something over $250,000.00. It seems that the real property

on which these improvements were placed was at first owned by the Cambria Fuel Company and its subsequent development by the lessor was with the idea of providing "an attractive place" largely for the residents of the vicinity. The lessor operated the property for four or five years, approximately, and it appears to have paid expenses. Since that time it has never made enough to pay for the taxes and cost of repairs. The amount of the taxes charged against this property "for the year 1941 was $563.24; for the year 1942, $510.12; for the year 1943, $505.32; for the year 1944, $491.82, these amounts being the original amount of taxes without addition of penalty or interest". The property was sold by the county of Weston for the delinquent taxes of the years 1942, 1943 and 1944.

On or about December, 1942, apparently under a lease, the lessee was put in possession of the premises aforesaid, and under date of April 1, 1943, the lessor and lessee executed a written lease. Thereafter and on July 6, 1944, they executed another written instrument of lease of similar character providing for a lease term of five years from the 1st day of January, 1944, "with an option of five (5) additional years under such terms and agreements for the additional term as may be acceptable to the parties at the expiration of the first five (5) year period of this lease".

This lease which designated the lessor as "first party" and the lessee as "second party", also contained, among others, the following provisions:

"For the first year from the date hereof second party shall cause the roof to be painted, the window sills and sashes to be repaired and painted, broken windows to be replaced, and make such other improvements and repairs as first party may determine are necessary; such expenditure for repairs to constitute the rental for the first year.

"For all succeeding years the second party shall improve the property to the extent of at least Five Hundred Dollars per year.

"All repairs for damages caused by the use of the buildings by second party such as broken windows, repair of injury to the floors or similar injuries shall be in addition to the above";

also,

"All taxes assessed against said property are to be promptly paid by the second party and not allowed to become delinquent".

Preceding the several provisions just quoted appears this language:

"Second party agrees to pay all taxes that may be assessed against the said premises for each year, except that if the said described property or any part thereof is declared exempt from taxation under the laws of the State of Wyoming second party shall then expend not less than Five Hundred Dollars ($500.00) in each year in repairs and improvements upon and for the benefit of the leased premises."

Plaintiff's witness Smith testified in his deposition above mentioned, which was taken July 5, 1945, that he was General Secretary of the lessee; that he was then in direct charge of the property. On direct examination he answered certain questions thus:

"Q.   What are the business activities of the International Pentecostal Assemblies? What is their purpose, what are they doing upon this property?

A.   We are using the property as a theological school for the training of missionaries and ministers.
Q.   Any other purposes besides school purposes?

A.   None at all.

Q.   Do you have any religious services?

A.   Oh, yes we hold religious services. That is necessary in the conducting of the school."

Also:

"Q. Would you say that generally the buildings are used entirely for school purposes?

A. Absolutely.

Q. Is that true now and has it been true during all of the time you have occupied the premises?

A. Yes, it is.

Q. State whether or not they will continue to be so used during the time you occupy it?

A. Yes, it will."

And:

"Q. What have you to say about the financing of this particular school under discussion here? How is it financed?

A. The tuition of the school is only $15.00 per month per student and there is no board and room charge and the remainder of the funds necessary to educate that student and to keep him in school has to be made up by the International Pentecostal Assemblies and that is done."

On cross-examination to the query, "is there a special place for church services, is there any certain portion set aside, is there a chapel room or anything of that sort?", the witness answered, "Well our religious groups have a place set aside for religious services. I mean they have a religious service but I wouldn't say it was any certain place"; and to the question propounded immediately following the last answer above quoted, which question was, "Do you have any particular place that is not used for any other purpose except religious services?", the response was, "At the present time, we don't." None of the foregoing testimony appears to be disputed.

On May 7, 1943, the lessor requested the Board to exempt from taxation the premises leased as aforesaid

"for the reason that the same was leased to said religious corporation and would be used exclusively for school and religious purposes during the term of the said lease and was therefore exempt", by virtue of Art. 15, § 12, of the Wyoming State Constitution, and § 115-104, W. R. S. 1931. This request was refused by the Board and the tax sale of the property, as already mentioned, ensued. Again, about December 4, 1944, lessor also presented a similar request to the Board wherein there was again sought an exemption from taxation of this property from December, 1942, and thereafter, that all taxes assessed subsequent to that date be vacated and that refund be made of any taxes paid subsequently. This application also was denied by the Board and the property was again sold by the county for delinquent taxes.

The plaintiff then brought this action February 26, 1945, with the result hereinbefore stated.| We have already set forth the question which the record and the parties hereto require of us the solution. The constitutional and statutory laws involved are Wyoming's Constitution, Art. 15, § 12, which reads:

"The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide.";

also the clause numbered "First" in § 115-102, W. R. S. 1931, as amended and reenacted by Ch. 54, § 1, L. of Wyo., 1933:

"The property of the United States and of this State, the property of any county, township, incorporated cities, towns, and school districts; public libraries; lots with the buildings thereon used exclusively for religious worship; church parsonages; and public

grounds by whomsoever donated to the public, including all places for the burial of the dead";

and § 115-104, W. R. S., 1931:

"Lands, with the buildings thereon, used for schools, orphan asylums or hospitals, and for lodge rooms for the meetings of all secret, benevolent and charitable societies or associations shall be exempted from taxation so long as said lands and buildings are not used for private profit."

It will be noted that § 115-102, supra, in a large measure merely reiterates the constitutional provision.

In construing laws exempting property from taxation the courts ordinarily are guided by certain elementary and familiar principles which may now be briefly mentioned.

61 C. J. 392 and 3, § 396, says that:

"Unlike the rule of liberal construction which has been generally adopted with reference to exemptions from levy and sale for the payment of debts, an alleged constitutional or statutory grant of exemption from taxation will be strictly construed, * * *."

See also 51 Am. Jur. 526, § 524.

2 Cooley Taxation, (4th Ed.) 1404-1408, § 672, uses this oft quoted language:

"In other words, since taxation is the rule, and exemption the exception, the intention to make an exemption ought to be expressed in clear and unambiguous terms, it cannot be taken to have been intended when the language of the statute on which it depends is doubtful or uncertain; and the burden of establishing it is upon him who claims it. Moreover, if an exemption is found to exist, it must not be enlarged by construction, since the reasonable presumption is that the state has granted in express terms all it intended to grant at all, and that unless the privilege is limited to the very terms of the statute the favor would be extended beyond what was meant."

A wealth of citations support the views of these texts.

So this court, in State ex rel. Goshen Irrigation District vs. Hunt, Sec. of State, 49 Wyo. 497, 57 Pac. 2d 793, remarked:

"* * * that a statutory grant of exemption from taxation is never presumed, must be clearly conferred in plain terms and should be strictly construed. 61 C. J. 393, 394, and cited cases; 26 R. C. L. 313, Section 274."

With these principles in mind and recalling also that the trial court made a general finding in favor of the defendants and against the plaintiff, it is apparent that there is abundant support from the testimony recited above on behalf of the plaintiff for the assumption on our part that the trial court found that the property was used by the lessee generally for school purposes and that religious services were held merely as incidental to that purpose. This being so, it would appear that § 115-102, W. R. S., 1931, as amended aforesaid, need not be considered in the disposition of this case as that statute requires property to be used "exclusively for religious worship". In that connection we observe that 2 Cooley Taxation, (4th Ed.) 1556, § 745, says that: "If church property is exempt only when exclusively used for public worship, then of course property used both for religious and school purposes is not exempt."

But if we should be mistaken in this view we are inclined to think that the weight of authority and reason alike preponderates in favor of a holding that even under such a statute and under facts as to lease like those at bar there can be no exemption allowed the plaintiff.

We, accordingly, examine the cases cited by it. The leading case to which our attention has been called is Scott vs. Society of Russian Iraelites, 59 Neb, 571, 81

N. W. 624. There the suit was to foreclose a tax certificate for general taxes held by the plaintiff upon certain property owned by one B. but leased for a monthly rental to the Society. The trial court held the taxes for the year during which the property was under lease to the Society were illegal and void. This decree was affirmed by the appellate court. The Nebraska statute then provided that certain property should be exempt "as may be used exclusively for * * * school, religious, cemetery and charitable purposes". Kansas cases (Washburn College vs. Comm'rs. of Shawnee Co., 8 Kan. 344; St. Mary's College vs. Crowl, 10 Kan. 442) and Gerke vs. Purcell, 25 Oh. St. 229, were cited and quoted from in support of the final ruling announced in the opinion filed. Though the laws involved were similar to that of Nebraska as to exemptions from taxation, the facts in all these cases were not like those before the court in the Scott case in that no lease of the several properties affected was under consideration in them. In others words there was but the one use of the properties in these cases relied upon, and that an exclusive use for an exempt purpose. It seems to have been overlooked in the Scott case that there were two uses, one for an exempt purpose and also one for a non-exempt purpose, i. e., a lease of the property for private gain by rental thereof annd so the property was not as it would seem, "exclusively" used for an exempt purpose which alone gave it a right to the exemption. The cited cases were, of course, correctly decided on their facts. It is true that the courts which disposed of them used general language to the effect that "ownership" was not the test, but "use", in determining whether an exemption from taxation should apply. However, Judge Brewer pointed out in the Washburn College case, supra, that to bring the property within the terms of the law there were three requirements needful to be met,—"First, that the property is used;

second, that it is used for educational purposes; and third, *that it is used for no other purpose.*" (Italics supplied.)

This decision in the Scott case seems not to have met the approval of the people of Nebraska for they subsequently, in 1920, altered very decidedly and materially the constitutional and statutory provisions construed in the decision last mentioned so as to read (Consnt. Nebr. § 2, Art. VIII, Comp. Stats. Nebr. 1922) : "The Legislature by general law may exempt * * * property *owned* and used exclusively for educational, religious, charatibale or cemetery purposes, *when such property is not owned or used for financial gain or profit to either the owner or user*". (Italics supplied). Under this changed fundamental law the legislature of that state promptly embodied its provisions in statutory form the following year. (Laws Nebr. 1919-21, p. 547; Sec. 5821 Comp. Stats. Nebr. 1922, subdiv. (2) ; 4 Nebr. Rev. Stats. 1943, p. 848 § 77-202).

The case of Anniston City Land Company vs. The State, 160 Ala. 253, 48 So. 659, appears to be the only other decision cited by the lessor here where, as in the Scott case, the property was under lease to an institution which in itself alone was entitled to be exempted from taxation and rental was paid therefor to one not listed as exempt from taxation, the exemption statute being similar to that in Nebraska. The Alabama court follows and adopts the views of the Scott case. The other cases cited for the plaintiff in their facts we do not find to be analogous to those in the case at bar.

However, our examination of the case law bearing on the question in the instant litigation has disclosed another case which should be classed with the Nebraska and Alabama decisions. It is that of Ross vs. City of

Long Beach, 24 Cal. 2d 258, 148 Pac. 2d 649. There the Constitution of the State of California exempted "property used exclusively for public schools" from taxation. Ross leased certain lands to a public school district which were used by it for school purposes. The Supreme Court of California assumed that rent was paid to him by the district for the use of the property although it seems it was not so alleged in plaintiff's complaint. The case was decided upon a judgment entered following the overruling of a demurrer to this pleading interposed by the taxing authorities, the action being one by the lessor to recover from the City of Long Beach certain taxes paid under protest. Aside from the fact that California has certain constitutional clauses which the court considered as influencing its decision and which our state constitution does not have and aside from the fact also that there was a dissenting opinion filed in the case it is evident that, like the Anniston Land Co. case, supra, the Ross case also follows and adopts the views of the Scott case aforesaid.

As against the rulings in the three jurisdictions above reviewed we find that other courts have reached a contrary result under similar exemption laws and similar facts.

State ex rel. Hammer, Collector vs. Mac Gurn, 187 Mo. 238, 86 S. W. 138, was an action brought by the Collector to recover back taxes from the defendants, owners of the fee who had leased for a term of years and for a substantial rental, certain lots to the board of president and directors of the St. Louis Public Schools. The answer by the defendants was a claim of exemption from taxation because of the use of this property for public school purposes. The constitutional and statutory law of Missouri provided for the exemption of "lots * * * when the same are used exclusively for religious worship, for schools", etc. (§ 6, Art. 10,

Const. and § 7504, R. S. 1889, § 9119, R. S. 1899). The defendants asserted that "it is the use and not the ownership which determines whether the property is exempt". The plaintiff's contention was that so far as the defendants were concnerned "the property was not used for school purposes, but for private profit and gain, because the defendants rented the same and derived a revenue of seventy-five dollars a month therefrom". Plaintiff had judgment below and the defendants appealed.

The real question, said the Supreme Court of Missouri, was what was meant by the term "used exclusively for religious worship, for schools". The court pointed out that "the ownership or title to the property is not the determining factor", for if property owned by a religious or school organization was leased for any other purpose than such as the law contemplated the land would not be exempt from taxation; and that if a private owner of the land allowed his land to be used for such purpose and charged no rent and derived no personal benefit from the land the same would be exempt from taxation because it would then be devoted exclusively to such a use. (City of Louisville vs. Werne, 25 Ky. L. Rep. 2196, 80 S. W. 224) ; and further, that in such cases the owner contributes the use of his land to public or quasi-public use as the exemption law contemplates, and getting no gain himself consequently the statute does not exact a tax from his land with one hand while accepting a contribution of the use of his land with the other hand. The court then said:

"when the owner leases his land to the public for a public use, or to a quasi-public body for a charitable or religious use, and applies the rents derived from the land to his own personal advantage, he contributes nothing to the public or to charity, he loses nothing by the use, he is not a benefactor to any one, but he stands before the law in exactly the same light as any one else

who leases his land for any other purpose, and uses the rents for his own advantage, and, therefore, he is not entitled to any special consideration at the hands of the law or the government, and his property is not exempt.

"There would be just exactly as much, and no more or less reason, for holding that the property of one who sold provisions or supplies to a charitable institution which were used to support the lives of the inmates thereof, was exempt from taxation. In both cases he would get and appropriate to his own use the proceeds or products of his property, just the same as if it had been rented or sold to a private citizen or to a business concern, and in neither instance would the State or the charitable institution be benefited one jot or tittle by the transaction, for it would pay a full consideration for all it got."

And the judgment was affirmed.

The case of South Dakota Sigma Chapter House Ass'n vs. Clay County, 65 So. Dakota 559, 276 N. W. 258, was an application by the Association for the refund of taxes paid by it. The County opposed the application. The Association had been incorporated to and did acquire real estate and erect a building thereon for use as a residence by members of a Greek letter fraternity which had a local chapter at the University of South Dakota. The chapter and the Association were distinct entities. The Association levied on the chapter for the use of the building annual charges equivalent to the amount of rent a stranger would have exacted. While assuming that the chapter was a benevolent or charitable society within the terms of the South Dakota law (§ 6670, Rev. Code of 1919) exempting "All property * * * used exlusively for charitable, benevolent or religious purposes", the Association was ruled not to have such status.

Affirming a judgment denying the Association's application the court said in part:

"This brings us to a determination of the effect of the use of the property by an assumed benevolence, the chapter, prior to July 1, 1929, during which period the right to exemption could arise from the exclusive use of the property for charitable or benevolent purposes. Section 6670, Revised Code of 1919, supra. Analysis has convinced us that when this problem is approached from the aspect of 'use of the property', ownership of the property continues as a factor to be considered. An exemption of this type is granted as a concession by government in return for unselfish ministrations to human welfare. That this concession is intended by the Legislature as a quid pro quo is asserted by authority. Carteret Academy v. State Board of Taxes and Assessment, 102 N. J. L. 525, 133 A. 886, 887; 61 C. J. 382. If the advantage of the concession so made be permitted to accrue to ownership rather than to the benevolence the law seeks to foster or promote, obviously the purpose of the law will be defeated. Therefore, the landlord may not claim exemption of property leased to an institution of one of the enumerated classes for a rent equivalent. As to such an ownership, the property is used exclusively for rental purposes, and not for charitable or benevolent or educational, etc., purposes." (Citing cases)

"Appellant stands in no better position than the ordinary landlord. In both instances the money equivalent exacted from the charity or benevolence intercepts the flow of the concession offered by the state, and operates to withhold it from that charity and benevolence. * * * The use of the property by appellant is characterized by its exaction from the chapter, and as to it, the property is not used exclusively for charitable or benevolent purposes."

In Jefferson Standard Life Insurance Co. vs. City of Wildwood, 118 Fla. 771, 160 So. 208, the Constitution of Florida exempted property from taxation which was "held and used exclusively for religious" etc., purposes. (Const. arts. 9, 16, §§ 1, 16). The bill of complaint of the insurance company sought to enjoin the collection of municipal taxes on real estate claimed to be exempt from taxation under Florida law

and alleged that the property taxed: ·

"was rented by your orator to the congregation of the First Baptist Church of Wildwood, Florida, and during all of said time (tax period), and continuously up to the present time, said building has been and is now used by the Congregation of said First Baptist Church, as a house of public worship, and during none of said time has said building been rented or hired for any other purpose except for a place of worship."

The complainant had obtained title to the property involved through a mortgage foreclosure proceeding. The trial court dismissed the bill on motion. On appeal this judgment was affirmed. Disposing of the point urged by the complainant's pleading the appellate court briefly said:

"In this case the property is not held and used exclusively for religious purposes. It is alleged that the property is 'rented by your orator,' a corporation, to the congregation of the church; therefore, being held for rental purposes, it is not 'held and used exclusively for religious * * * purposes' within the meaning of the provisions of section 16 art. 16, of the Constitution."

Where the constitution of the state (§ 170) provided an exemption from taxation for "places actually used for religious worship with the grounds attached thereto and used and appurtenant to the house of worship," in Commonwealth vs. First Christian Church of Louisville, Ky., 169 Ky. 410, 183 S. W. 943, the court had occasion to consider a factual situation involving the question whether property turned over to a church organization by a private owner who was compensated by the organization for such use was exempt from taxation. On that point the court employed this language: "No one would seriously insist that the constitutional exemption from taxation would apply to property which the owner uses to let to rent to a religious body, to be used for religious worship, and the mere statement of such a proposition is sufficient to show that the constitutional provision has no application to such a

state of case, and that such was not in the contemplation of the makers of the constitution. So, it seems that if appellee, Starks, employed or used the property purchased by him for gain, by entering into such an arrangement with the trustees of the First Christian Church, that he was remunerated by the church for its use of the property for religious worship, the use he made of the property was one by which he received compensation for its use, and the use to which he put it was not for religious worship. When one lets his property for rent, the use, which he is making of it, as the owner cannot be said to be a use for religious worship."

A judgment in favor of the owner was reversed.

In Spohn vs. Stark, 197 Ind. 299, 150 N. E. 787, it appeared that the plaintiff brought an action against the treasurer of Elkhart county to enjoin that official from collecting taxes upon a lot and building thereon which the plaintiff had leased for five years to the State of Indiana as an armory for a company of the Indiana National Guard, and which was exclusively used by it for that purpose. A demurrer to the amended complaint was sustained and the ruling was assigned by plaintiff as error on appeal. Clause 24, § 10139f, Burns' Supp. 1921, (Sec. 6c,222 Acts 1921, pp. 646, 651), provided:

"24th. That all real estate and personal property used exclusively by the Indiana National Guard or any other military organization of the state for armory purposes, shall be exempt from taxation so long as the same is being used for such purposes."

The appellant's contention was that his property was not taxable as against him so long as it was "used exclusively" as an armory by the National Guard Company, notwithstanding he was receiving payment of rent for such use. Ruling against this contention and affirming the trial court's judgment the appellate court, on review remarked:

"And we are convinced that a construction by which the lessor's interest in property for the use of which he receives rent might be held exempt from taxation merely because of a use to which the property was put by the lessee, and not by himself, would violate the terms of the Constitution as above set out. A just valuation for taxation of all property, except such only, for municipal, educational, literary, scientific, religious, or charitable purposes, as may especially be exempted by law, does not permit the exemption from taxation of an interest in property which is used for rental purposes, and thereby is made to produce an income from the rents received, merely because the lessee may devote the leasehold to a municipal, educational, literary, scientific, religious, or charitable purpose; and the general assembly would have no authority to exempt the lessor from payment of taxes on property so used, even though it should undertake to do so. * * * It appears that, so far as plaintiff and his interest in the property as lessor are concerned, the only use which he has made of the property is for rental purposes to earn an income for his private advantage. And we do not think that the property, to the extent of his interest therein, 'is used exclusively' for armory purposes by the Indiana National Guard, within the meaning of the statute, interpreted as it must be in view of the constitutional limitation on the power of the legislature to exempt property from taxation."

To the same effect is the earlier case from the same jurisdiction, the Travelers' Insurance Co. vs. Kent, 151 Ind. 349, 50 N. E. 562, 51 N. E. 723, where it was held that the lands of a private owner, leased and occupied for school purposes, were not exempt from taxation.

See also People ex rel. Rorke vs. Assessors, 32 Hun. (N. Y.) 457.

With the results reached and reasoning employed in the Missouri and other cases reviewed above we agree. We cannot think that it was the intention of the framers of our state constitution and the legislators of this state which enacted the laws exempting property from

taxation to intend that a person whose property would ordinarily be subject to taxation should be released from bearing his share of the expense of government by simply leasing his property for a substantial rental to an Association which, due to the purposes for which it was organized, is regarded as a public benefactor and for that underlying reason is exempted from paying taxes when using property for those purposes. When a person derives income from property in such fashion it seems to us he is using it for his own personal advantage and we can see no valid reason why he should not, as all other citizens who rent their property do, pay the taxes regularly assessed to it.

It is clear, from what has been hereinbefore said that plaintiff cannot be aided by either the provisions of our state constitution cited above or those of § 115-102 (as amended, supra) W. R. S., 1931, relative to property exempt from taxation. We turn, then, to the pertinent part of § 115-104, W. R. S. 1931, which we have observed declares that "lands with the buildings thereon used for schools * * * shall be exempted from taxation so long as said lands and buildings are not used for private profit".

It may be observed just here that the cases from Nebraska, Alabama and California, above reviewed, were not disposed of under laws with clauses therein allowing exemption when the property affected is "not used for private profit". Hence they cannot be regarded as authorities on this phase of the case at bar even if we felt we should follow their rulings. We now call attention to cases where that missing element does appear in the statutes considered and so they resemble our § 115-104, supra.

The case of People ex rel. Carr, County Collector, vs. City of Chicago, 323 Ill. 68, 153 N. E. 725, in its facts and applicable law would appear capable of classifica-

tion as decided under statutes similar to both §§ 115-102 and 115-104, W. R. S. 1931, supra. There the City of Chicago, opposed the entry of a judgment for the sale of certain lands for delinquent taxes. Nine pieces of property were involved, four of which were used for public playgrounds, three for police department buildings, one as a fire engine station and one as a location for a hospital. All these pieces of property were simply leased to the city and were not owned by it. As to the playground properties the city was to pay one dollar per year and assume and pay all taxes and assessments during the lease term. As to the other five pieces, substantial rentals were required by the several leases to be paid the owner and in addition the city agreed to assume and pay all the taxes thereon. The trial court overruled the city's objections and entered a judgment of sale.

The ninth clause of § 2 of the Illinois Revenue Act (Smith-Hurd, Rev. Stats, 1925, c. 120) provided for exemption from taxation of "all market houses, public squares or other public grounds used exclusively for public purposes"; clause 6 of said section exempted "property owned by any city or village located within the incorporated limits thereof"; clause 7 of said section exempted "all property of institutions of public charity * * * when any such property is actually and exclusively used for such charitable or beneficent purposes and not leased or otherwise used with a view to profit" etc.

It was contended for the city that the use for public purposes was sufficient to make these properties exempt and also that, because the hospital property was operated for charitable purposes, it, for that reason also, should be regarded as exempt. Holding adversely to these contentions and referring to clause 7, supra, the court said:

"That clause also provides that such property, in order

to be exempt, shall not be 'leased or otherwise used with a view to profit.' Real estate taxes are levied against the property. Exemptions are exemptions of the property. Such taxes are not levied against persons or institutions, and exemptions therefrom are not exemptions to persons or institutions, though the effect may be to relieve the owner of the payment of the taxes to protect his interest in the property. The tax is against the property. In order, therefore, that the property be exempt when used for charitable purposes, it is provided that it shall not be leased or used with a view to profit. In this case the property in which the hospital is conducted is under lease, and by the terms of the lease produces an income to its owner of $1,800.-00 per year. The city, as lessee, agrees to pay this amount at the rate of $150 per month, and, in addition, to pay all taxes and assessments thereon. The property, therefore, is what is known as 'income-bearing property.' In determining whether or not property is exempt, it is necessary to apply the rule that exemption statutes must be construed strictly, and the further fundamental consideration that real estate taxes are against property and not against individuals, and that exemptions are to apply to property that is not bearing an income, but is used solely for the purposes declared to be exempt. This property, therefore, does not comply with the provisions of clauses 6, 7, or 9 of section 2 of the Revenue Act, relating to exemptions, and we know of no provision under the law exempting property which, in fact, bears an income not devoted to purposes which render the property exempt. In this case the sum of $1,800 per year is paid to the owner of the land, and it is the contemplation of the law, therefore, that the land shall bear its share of taxation. It cannot be questioned that the owner would, in the absence of such a lease, be required to pay the taxes. The fact that the city has contracted to assume that burden does not render exempt property which is not exempt by law."

The judgment of the court in overruling the objections to the taxes upon all of these pieces of property was affirmed.

In County of Hennepin vs. Bell, 43 Minn. 344, 45 N. W. 615, the facts were that owners of property leased same to the trustees of an institution of learning known as "Bennett Seminary", at a stipulated annual rental and they were occupied by it during the year for which the county sought to collect taxes upon such property. The owners claimed exemption because of such occupancy and use. General St. 1878, c. 11, § 5, provided that "all property * * * to the extent herein limited, shall be exempt from taxation; that is to say: All * * * seminaries of learnings, * * * and the grounds attached to such buildings necessary for their proper occupancy, use, and enjoyment, and not leased or otherwise used with a view to profit". Deciding that there could be no tax exemption allowed, the opinion in the case concludes:

"But the lessors claiming the benefit of the exemption in this case are mere private owners of the property, and the exemption is not for the lessees, the trustees of the seminary, and it can only be claimed *arguendo* to be for their benefit in an indirect and collateral way. *Black v. City of Brooklyn*, 51 Hun, 581, (4 N. Y. Supp. 78). If we are right in our construction, then the mere use for school or educational purposes of the property of a private owner, sustaining merely the relation of lessor to a school or seminary, does not create an exemption in his favor. In short, as respects seminaries and educational institutions, the statute has reference to such buildings, with the site, which the society, board, corporation, or trustee representing such institution, and holding its property, would be bound to pay a tax on as owner but for the exemption."

51 Am. Jur. 594, § 616, states that:

"Some statutes expressly limit the exemption to property 'not leased or otherwise used with a view of profit.' Under such statutes, property leased to a religious body, and for which rent is paid, is not exempt."

The case of Commissioners of Blair County, 8 Pa. Dist. Rep. 41, had under consideration the General As-

sembly Act of May 14, 1874, P. L. 158, which exempted "all churches * * * and institutions of learning, benevolence or charity, with the grounds thereunto annexed" from taxation with a proviso that "if any income or revenue is derived" the same should be taxed. The constitution of the State of Pennsylvania exempted nothing but permitted the legislature to exempt "public property used for public purposes * * * and institutions of purely public charity". The facts appearing in the case were that the Commissioners of Blair County maintained an industrial home for poor children on land leased to them by the owner, paying therefor a small yearly rental. The question for determination was whether the land owned by the lessor B. but thus used should be taxed. Holding that it should be the court said:

"Strictly construing said constitutional and legislative enactments, it would seem clear that the property now in question is subject to taxation. It is not 'public property used for public purposes', but private property—to-wit, the property of Mr. Bridenbaugh—used for public purposes. Were the commissioners to rent a hall, wherein to hold court, it would scarcely be claimed that said hall was exempt from taxation."

We find in College of Paterson vs. City of Paterson, 18 N. J. Misc. 29, 11 Atl. 2d 320, it was held that under 'a statute providing for the exemption of property of educational, religious and charitable organizations, from taxation, (N. J. S. A. 54: 4-3.6), the renting of a building by a general corporation to a college, and payment of rent therefor by the college to the corporation, constituted the "conducting of such building for profit" and deprived the college of any right to exemption from taxation of its personal property located in the building. The view on this point expressed by the New Jersey State Board of Tax Appeals was stated thus:

"Entirely apart from the ground for denial of exemption thus far considered herein, that result must

be reached nevertheless for another reason. The proviso which we have numbered 4, in the act, provides 'in case of all the foregoing', (necessarily including an application for exemption on behalf of personal property) that the buildings, or the lands or the institutions using them are not conducted for profit. We construe this provisions to provide clearly that personal property, though used for school purposes, is not tax exempt when located in a building operated for profit. The building here in question is conducted for profit in that it is a source of revenue to the landlord to whom petitioner pays rent."

A statute of the State of Washington, (§ 11111, Rem. Rev. Stat.) enacted that:

"The following property, to the extent herein limited, shall be exempt from taxation:

"First: All lands used exclusively for public burying grounds or cemeteries, all churches built and supported by donations whose seats are free to all, and the grounds whereon such churches are built, not exceeding one hundred and twenty feet by two hundred feet in quantity, together with a parsonage: * * * Provided, That such grounds are used wholly for church purposes and not otherwise; also the property of other nonsectarian organizations or associations, organized and conducted primarily and chiefly for religious purposes and not for profit, which shall be wholly used, or to the extent solely used for the religious purposes of such association, or for the educational, benevolent, protective or social departments growing out of, or related to, the religious work of such associations."

Under this law a church organization sought to have the collection of taxes levied upon real estate owned by it in the City of Seattle, but leased to another association engaged in religious work, enjoined by the trial court. It was successful there and the taxes were adjudged illegal and void. In Norwegian Lutheran Church of America vs. Wooster County Assessor, 176 Wash. 581, 30 Pac. 2d 381, that judgment was reversed upon appeal by the taxing authorities and the court said on the point with which we are now concerned:

"Appellants next ask, Does the fact that property belonging to a church is leased to another organization engaged in a religious work and the rental received used to carry on the religious work of the lessor operate to exempt from taxation the property so leased?

"We think not. When the owner leases property he parts with the possession and the use for a consideration. He owns and holds the property for the purpose of receiving an income therefrom, and his use is therefore purely a commercial one. We see nothing in the statute to the effect that one renting property to another for a consideration may have that property exempted from taxation because of the use to which the lessee puts the property. The property leased is not and cannot be used 'for the religious purpose of such association,' which is the lessor. * * * Property leased is not wholly and solely used for religious purposes because the rental received is expended for the furtherance of such purposes. To hold otherwise would permit of religious organizations being endowed with vast holdings of real estate consisting of business blocks and other large improved properties devoted to commercial uses, all of which would be exempted from taxation by the mere using of the revenue for the support of religious work. We find nothing in the statute indicating that such was the legislative intent."

In connection with the foregoing case it may be appropriately noted here that under date of June 9, 1925, the Attorney General of the State of Wyoming, gave a written opinion to the county attorney of Laramie County expressing the view that "private property rented to and used by the Y. W. C. A., (Young Women's Christian Association) in the City of Cheyenne, was not exempt from taxation". There a substantial annual sum was paid as rental by the Association to private interests which owned the property thus leased. This view of the then ranking law officer of the state seems not to have been dissented from by officials holding that office thereafter so far as has been drawn to our attention.

Indeed, under date of June 15, 1943, we find that the present incumbent of the office gave an opinion to the county attorney of Weston County, in which this very question, viz., whether, as the Attorney General stated it, "real estate owned by the Commissioners of Cambria Park, a non-profit corporation, and leased to International Pentecostal Assemblies, a non-profit religious corporation," was exempt from taxation, when the body last mentioned was "using the premises as 'a school for the purpose of teaching religious principles'," was considered. Without referrring, in any way, to the opinion of his predecessor in the same office concerning the Y .W. C. A. matter mentioned above the opinion was to the effect that this real estate was not exempt from taxation. These opinions seem not to have been discussed in the briefs submitted on behalf of the parties herein nor on oral argument of the case at bar, as we recall.

The very well considered case of City of Dallas, vs. Cochran, 166 S. W. 32, was one decided by the Court of Civil Appeals of Texas, and, though a writ of error to the Supreme Court of that state was sought to review the decision, it was denied, (170 S. W. XVIII). It was there held, under the tax exemption law of the state, that a building used exclusively for public worship was not exempt from taxation where it was owned by a private individual and leased to a religious society which used the same and which paid a monthly rental, for the reason that such property was leased and used by the owner with a view to profit—a use the statute did not permit. The statute involved and the court's views concerning it and the facts presented are stated in the opinion thus:

"Section 1, art. 7507, R. S., provides exemption from taxation to the following property, in words as follows: 'Public schoolhouses and houses used exclusively for public worship, the books and furniture therein

and the grounds attached to such buildings necessary for the proper occupancy, use and enjoyment of the same, and not leased or otherwise used with a view to profit.' The latter clause, 'and not leased or otherwise used with a view to profit,' has clear and explicit reference alike to each the house, the books and furniture, and the ground occupied by the building. And such clause could not properly be construed otherwise than as a qualifying clause upon each and every subject-matter preceding it in the provision. In this view, then, the provision must be here read as exempting from taxation a house and necessary grounds which are (1) 'used exclusively for public worship,' and (2) 'not leased or otherwise used with a view to profit.' The language of the first clause, 'used exclusively for public worship,' quite clearly denotes the mode and character of use to which the particular property must be put before taxes may not be imposed. But under the second, and qualifying, clause of the provision, the particular property may not be exempted from taxes, though used exclusively for public worship, if 'used with a view to profit.' It is manifest from the language that the use of the property for church purposes, and the use of the property for profit, cannot both exist if the property is to be exempt. And as the dual use of the particular property cannot exist if the property is to be exempt, it is difficult to perceive how the exemption could apply to the facts here. The fact that the lessee used the premises under a rental contract for church purposes would be opposed by the fact that the owner, claiming the exemption, was himself putting his property to the use of private gain. And requiring that the property be 'used' for religious worship, and not 'used with a view to profit,' would indicate that the Legislature had in mind, in measuring the exemption, the entire use to which the property is put by all concerned. The language does not express any other meaning. If the full use which the property is put to by all concerned must, under the language of the act, measure the exemption, then there is no warrant to construe the provision in hand as saying that the property would be covered by the exemption if it is not rented out by a lessee. The words do not say so. And neither do we think it means that. The purpose of employing the language of limita-

tion in the second clause is made apparent when it is considered that without this clause the owners of property might lease it for profit, to be used by the lessee for public worship, and thereby exempt it from taxation. And clearly, we think, the Legislature meant, by adding the language of limitation of the second clause under consideration, to prevent the owners of property, whoever they might be from taking advantage of the exemption when any profit to them is derived from the particular property."

The court ,in the foregoing decision refers to the Scott, The Anniston, and the Kansas case of Vail vs. Beach, 10 Kan. 214, and distinguishes each as decided under statutory exemption laws different from the one before it. The case of State vs. MacGurn, supra, is also briefly reviewed by the court and the comment is made that this Missouri ruling is contrary to that announced in the Scott case, supra, though under a quite similar statutory tax exemption statute. No case has been drawn to our attention which questions the reasoning of this Texas decision under a like statute. The analogy between § 115-104, W. R. S., 1931, supra, and the Texas tax exemption law is manifest, and the same may be said of the New Jersey, Minnesota, Washington, Pennsylvania, and Illinois tax exemption laws considered in the cases cited above from the appellate courts of those states.

Profit is defined by Webster's New International Dictionary, as "accession of good; valuable results; useful consequences; avail; gain." The Supreme Court of Ohio in State vs. Zellner, 133 Ohio St. 263, 13 N. E. 2d 235, 238, has defined "profit" thus, "'Profit' may be said to be 'gain, benefit, or advantage,' but 'gain, benefit, or advantage,' does not necessarily mean only 'profit'." This definition has also received the approval of the court in Union League Club vs. Johnson, 18 Cal. 2d 275, 115 Pac. 2d 425-426. In the case at bar the lessor obligated the lessee not only to pay the taxes upon the

premises leased, which as hereinabove indicated amounted yearly to approximately $500.00, but also to place improvements each year upon the lessor's property amounting to "at least $500.00". So it is clear, as it seems to us, that the lessor gained, was benefited and advantaged each year of the lease term to the extent of at least $1,000.00, and so was using its property for "private profit".

We have reviewed, at some length, the applicable cases which our examination of the material question here has brought to light in order that the statutory and constitutional laws, the facts and the reasoning employed could readily be compared, weighed and a proper conclusion here reached. Under the case law in other jurisdictions where found to be in point, the facts as presented by the record, our own state law on the subject, and, as we view it, sound reason alike, we are led to the conclusion that the judgment of the district court of Weston County was correct and it should be affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.