CITY OF CHEYENNE, a municipal corporation of the State of Wyoming, Appellant (Plaintiff below),

v.

BOARD OF the COUNTY COMMISSIONERS OF the COUNTY OF LARAMIE, Appellee (Defendant below).

No. 3846.

Supreme Court of Wyoming.

April 29, 1971.

William A. Riner, City Atty., David H. Carmichael, Asst. City Atty., Cheyenne, for appellant.

John W. Pattno, Laramie County Atty., Alan B. Johnson, Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Mr. Justice GRAY delivered the opinion of the court.

The county placed upon its tax assessment roll for the years 1964 to 1969, inclusive, five buildings owned by the City of Cheyenne, Wyoming, and located upon its municipally owned and operated airport. The buildings in question were leased by the city to profit-making private corporations or individuals on fairly short-term leases, and according to the county were not being used for governmental purposes. The city disagreed, claimed that the buildings were exempt from taxation, refused to pay the taxes levied, and in 1969 commenced an action to obtain a judgment declaring and fixing "the rights, liabilities, status and legal relations of the parties as affected" by the law applicable thereto. The case was submitted to the trial court under an agreed statement of facts. Thereafter the trial court entered a judgment declaring that three of the buildings were partially exempt and that the other two were subject to taxation. The city has appealed.

The county on the other hand has not appealed from the trial court's holding adverse to it and as a result the only question before us is the city's claim that each of the buildings was wholly exempt. In this connection it should be pointed out that the county does not claim that a municipally owned and operated airport, together with the improvements thereon owned by the municipality, is not a governmental function, or in other words is not used for a governmental purpose. It asserts only that the buildings in question exclusive of the airport land upon which the buildings were constructed were not under the circumstances presented being used for a governmental purpose and hence do not come within the exemption. Consequently we are not here concerned with the broad question of the status of the "airport," whether governmental or proprietary, but only with the status of the buildings, and the ensuing discussion should be so understood.

By way of general information pertinent to the problem, this court in Town of Pine Bluffs v. State Board of Equalization, 79 Wyo. 262, 333 P.2d 700, had occasion in the year 1958 to consider significant changes made in the constitution and the statutes of this State at about that time with respect to the taxation of property owned by the United States, the State, and governmental subdivisions thereof, including cities and towns.[1] As reflected therein, the significant change made in Art. 15, § 12 of the constitution as it relates to the first clause was to discard ownership as the sole basis for exemption and to limit the exemption of such property to that owned and "used primarily for a governmental purpose." The tax problem in Town of Pine Bluffs was, of course, not the same as that now presented, dealing as it did with taxation of a municipally owned and operated electrical utility which the legislature had failed specifically to enumerate as exempt in § 39–7, in contrast to municipally owned "airports," which were specifically enumerated as exempt property. Much of what was said and done in the case, however, has a direct bearing upon what must be done here.

---

1. The opinion sets forth verbatim Art. 15, § 12, Wyo.Const., as it existed prior to the year 1956 and as amended in that year, and the provisions of § 32–102(E), W.C.S.1945, as amended in 1957 (now § 39–7 First (E), W.S.1957), relating to the exemption of property owned by cities and towns, which has not since been amended in that regard.

With respect to the buildings, the legislature in § 39–7 did not undertake to set forth the nature of the improvements—which in Wyoming are assessed separately from real estate, Art. 15, § 12, Wyo.Const.—falling within the broad term "airports." Nevertheless, we are not without some guidance as to what was intended. The legislature by Ch. 57, § 1, S.L. of Wyoming, 1959 (§ 10–37, W.S.1957, 1969 Cum.Supp.), which granted the power to municipal corporations to acquire lands and other property for "airport purposes" and to construct thereon and maintain and operate such facilities as deemed necessary for the "housing" and "care" of aircraft, set forth terminal buildings, warehouses, repair and assembly shops, and "all other attendant facilities" as falling within the class which it regarded as essential or necessary facilities of an airport. That understanding appears to be in keeping with the generally accepted meaning of the term. For example, Webster's Third New International Dictionary, Unabridged, p. 46 (G. & C. Mirriam Co., Publishers, 1961), defines "airport" as "a tract of land or water that is adapted and maintained for the landing and takeoff of aircraft and at which facilities for their shelter, supply, and repair are provided: a terminal point for air passengers and cargo." That being the case, we see no reason for disregarding the expressed views of the legislature as to what buildings are deemed necessary facilities for an airport.

That, however, does not furnish a complete answer. The city concedes, and properly so, that the first clause of the constitutional provision is a limitation upon the powers of the legislature to exempt municipally owned property from taxation and it can only do so when such property is "used primarily for a governmental purpose." That, of course, entails in the first instance a determination as to what was intended by use in the exemption statute of the broad term "airports." If taken literally it is arguable that the buildings in question were within the reach of such a blanket exemption irrespective of use. So to construe the statute, however, would be to ascribe to the legislature an intention to evade or circumvent the constitutional restraint upon its powers to exempt municipally owned property from taxation. This the courts will not do unless the violation clearly appears. In our view, that has not been shown and we will not presume "the legislature intended to enact a law in violation of constitutional restrictions." Hanson v. Town of Greybull, 63 Wyo. 467, 183 P.2d 393, 397.

The problem then gets down to a determination of just what is meant by use of the word "primarily" and what is meant by the term "governmental purpose" in the first clause of the constitution. In that respect we have not been much enlightened by the proceedings relating to the amendment, which is understandable. The term "governmental purpose" is not readily amenable to precise definition and such determination is largely dependent upon the circumstances presented in each case. As a general rule, however, many if not the majority of the authorities we have examined undertake to solve the problem by applying the tests utilized in fixing tort liability on the basis of whether a particular activity is governmental or proprietary. We pointed this out in Town of Pine Bluffs, and while the question there was resolved on the basis that the sale of electricity was a proprietary rather than a governmental function we recognized that such a concept does "not necessarily determine whether for other purposes the activity can or cannot be held to be governmental." 333 P.2d at 709.

We further said in that case that such term was not to be construed "too narrowly," 333 P.2d at 711, which would seem to be in keeping with the general rule that where the established policy of the State is to exempt publicly owned property the view that provisions of the constitution and statutes must be strictly construed does not apply nor does the view apply which was expressed in Commissioners of Cambria Park v. Board of County Com'rs of Weston County, 62 Wyo. 446, 174 P.2d 402, 405, that taxation is the rule and exemption will not

be presumed. The opposite is true. Hanover, Tp. of, v. Town of Morristown, 4 N.J.Super. 22, 66 A.2d 187, 188; 51 Am. Jur., Taxation, § 557, p. 550. The burden is on the taxing authority to establish taxability. 84 C.J.S. Taxation § 225, p. 435.

■ In considering whether or not as a general proposition buildings owned by a municipality and located upon its airport and used primarily for the housing, care, repair and service of aircraft can be said to constitute a "governmental purpose" we are, of course, as indicated above, impressed with the fact that the legislature apparently regarded such facilities as an essential or necessary adjunct to an airport. The mere fact that the city accomplishes such use through a lessee or receives rent in return for such use is not controlling. City of Toledo v. Jenkins, 143 Ohio St. 141, 54 N.E.2d 656, 663; People ex rel. Lawless v. City of Quincy, 395 Ill. 190, 69 N.E.2d 892, 897; Town of Harrison v. County of Westchester, 13 N.Y.2d 258, 246 N.Y.S.2d 593, 196 N.E.2d 240, 243. Neither do we think, as the county seems to contend, that the mere renting of the buildings to a lessee engaged in a profit-making venture is of itself a use for nongovernmental purposes. It depends upon the circumstances. The test, as we view it, is whether or not those buildings were primarily used and being so used as reasonably necessary or essential facilities to the efficient operation and maintenance of the airport. If so, the improvements were not subject to taxation. If not, the tax imposed was proper.

With the foregoing in mind we turn to the stipulated facts concerning the use of each building. Buildings 4, 8, and one-half of 14 were leased to two organizations identified as "fixed base operators." It was then provided:

"* * * A fixed base operator services, repairs, equips, operates, fuels, stores, and sells aircrafts to and for the general public. A fixed base operation at airports throughout the country is necessary and incidental to travel by air. The fixed base operations at the Cheyenne Municipal Airport are used by commercial, corporate and private aircraft. * * *"

Apparently for purposes of apportionment, the parties stipulated the percentum that the departmental sales bore to the total sales of the lessees, reflecting the following:

"* * * Airplane sales 20%, Flight (charter and instruction) 22.2%, Service (parts and labor) 14.2%, Line (fuel and hangar storage) 43.6%."

The case having been so submitted, the trial court used the percentages for apportioning the taxes levied on the buildings in question and concluded that 57.8% of the use was "necessary and incidental to travel by air" and thus not taxable, but that the 42.2% devoted to airplane sales, charter flights, and instruction was taxable. Whether the method presented to and utilized by the trial court for purposes of apportionment was proper need not be determined. In our view the ultimate conclusion was erroneous in any event in that it was contrary to the stipulated facts, and inasmuch as each building under our system was separately assessed no apportionment was necessary.

■ Aside from the matter of instruction, which was not mentioned as an activity of a fixed base operator but which at best would seem to be only an incidental activity of such operator, the parties in substance agreed that a "fixed base operation" was a necessary adjunct to the operation of an airport. That being true, it reasonably follows that the buildings here discussed meet the test we said should be applied and were "used primarily for a governmental purpose" within the reach of the constitutional provision and the exemption statute. Consequently no part of those buildings was subject to taxation.

■ One of the other buildings—identified as No. 101—had been leased to a private corporation during the years involved and according to the stipulated facts it "was in the business of modification, repair, overhaul, conditioning and testing of aircraft, aircraft parts and incidentals for

the United States of America and for others. Also these services were made available in an increasing degree over the years to others. To carry out some of these activities, airport facilities were required." These services were rendered under contract—principally with the United States Government—and although it was agreed that "airport facilities were required" for rendition of a certain "percentage" of the services, nothing was said concerning the availability of such services to the general public or the relationship of the enterprise to the necessary and efficient operation of the airport itself. It is the city's contention, however, that the greater portion of the lessee's business, except for years 1966 and 1969, was for "airport associated uses" and hence was not subject to taxation. The trial court rejected that contention and properly so. To collate "airport associated uses," which we take to mean nothing more here than the use of airport facilities for the landing and takeoff of aircraft, with a necessary and essential activity in the efficient operation of the airport, or in other words a "governmental purpose," is unreasonable and unwarranted. The trial court quite properly held that building 101 was not exempt from taxation under the circumstances presented.

The remaining building, No. 5, was leased to the Cheyenne Ambulance Service, which although subsidized by both the city and county rendered a county-wide ambulance service for which it made charges to users of the service. It was agreed that only 3% of its service calls was in response to airport accidents or contemplated accidents. Under the terms of the lease the building was to be used solely for ambulance purposes and the lessee also agreed to provide service at the airport in keeping with instructions given by the city from time to time. Whether or not the city exercised that privilege does not appear in the record. The trial court concluded "there is no connection between necessary facilities of an airport and such operation" and held that the building was not exempt from taxation as municipal property which is part of an airport. We are inclined to agree.

In the first instance, the stipulation of the parties discloses there was little need for such services at the airport and it does not appear that the service was on a standby basis. That is not to say, of course, that there may not come a time when it could reasonably be deemed that such a service would be a facility necessary and essential to the operation of an airport in order to meet the volume of traffic generated by public demand. We agree with the trial court, however, that so far as the present circumstances are concerned, as disclosed by the record, such time has not yet arrived.

The city lays much stress on the need for such services in the city and in the county and the fact that the operation is subsidized by those entities. Its counsel liken this to the reference made in Town of Pine Bluffs that the constitutional provision was not intended to stifle an activity engaged in by the city "for the general welfare of the people and which constitutes purely gratuitous service." 333 P.2d at 711. While it is true that the public no doubt did receive a benefit by the respective governments making such a service possible, a matter worthy of consideration, the fact remains that the service did not meet the test we have prescribed to bring it within the "airport" exemption and, of course, the service was not gratuitous.

The judgment below is modified insofar as it decreed that any portion of buildings 4, 8, and 14 was subject to tax, and is affirmed with respect to buildings 101 and 5.