Commonwealth ex rel. City of Lancaster, Appellant, *v.* S. S. Martin, Treasurer of the County of Lancaster.

*Public officers—County treasurers—License fees—Act of June 9, 1891.*

Under the act of June 9, 1891, P. L. 248, and the act of May 18, 1887, P. L. 108, the fees for liquor licenses must be paid in the first place to the county treasurer, whose duty it is to retain the amount belonging to the county, and pay over the balance to the cities, boroughs and townships entitled to receive it.

The money received by the county treasurer belongs to the different municipalities for which it is received, and does not become the money of the county because it is in the custody of the county treasurer. A city therefore entitled to a portion of the fees may by mandamus compel the county treasurer to pay over the amount due to it, notwithstanding the fact that the treasurer has been notified by the county commissioners to hold the amount claimed towards payment of a judgment held by the county against the city; and the county has no right to intervene in such mandamus proceedings.

Argued May 21, 1895. Appeal, No. 305, January Term, 1895, by plaintiff, from order of C. P. Lancaster Co., Trust Book 15, p. 313, refusing peremptory mandamus. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Petition for writ of mandamus by Edwin S. Smeltz, mayor of the city of Lancaster, against S. S. Martin, treasurer of Lancaster county, to compel the payment of a portion of the liquor license fees collected by the respondent, and alleged to be due to the city of Lancaster.

Upon the petition of the commissioners of Lancaster county, an order was made on December 13, 1894, permitting the county to intervene in the proceedings.

Martin filed an answer in which he averred as follows:

" 5. That there has never been presented to him any warrants from the commissioners of Lancaster county for the payment of said sum to the said city, neither has any judgment nor judicial decree in behalf of said city against said county for the said sum ever been brought to his notice.

" 6. That prior to any demand made upon him by said city for the said money, the commissioners of Lancaster county notified him in writing not to pay any portion of said license money to said city, as the county claimed the right to appropriate it in part payment of a certain judgment held by the county against the city.

" 7. That your respondent does not owe to the city of Lancaster the said money, nor any money, individually, and that he has at all times been ready and willing in official capacity as treasurer of the county of Lancaster to pay the said money to the said city of Lancaster if it is by law entitled to have the same, but that the money having been claimed by both the county and the city he is advised that he could not with safety to himself and his bondsmen pay the same to the said city otherwise than upon the proper warrant of the commissioners of Lancaster county, or under the direction and protection of a proper judgment or decree of a court of competent jurisdiction in the premises."

The county commissioners also filed an answer in which they averred that the county held judgments against the city to an amount in excess of the share of license fees due to the city, and they claimed to hold the license fees in part payment of the judgment. The city demurred to the answer.

The court in an opinion by LIVINGSTON, P. J., overruled the demurrers, and refused to award a writ of mandamus.

*Errors assigned* were, among others, (1) in not awarding a peremptory mandamus; (2) in entering judgment that the respondents go without day, and that they recover of the relator their cost.

*John E. Snyder*, *W. T. Brown* and *W. U. Hensel*, *J. W. Brown* and *J. Hay Brown* with them, for appellant.—License moneys received by the person holding the office of treasurer of a county are not received by him primarily for the county, but for the county and the respective city, borough or township which, under the act of 1887, it was directed shall share these moneys : Philadelphia v. Martin, 125 Pa. 583; Com. v. Durkin, 109 Pa. 138.

The person thus designated being a public functionary, and his act being a ministerial act, and he himself admitting in this case that he has no purpose to retain these moneys and that he " is willing to abide by the decree of the court " in the issue raised between the city and county, he was certainly in a position to properly be made the subject of a mandamus proceeding: Com. v. Johnson, 2 Binn. 275; Com. v. Com. of Allegheny Co., 32 Pa. 218 ; Griffith v. Cochran, 5 Binn. 87 ; Com. v. Cochran, 1 S. & R. 473.

There can be no claim of defalcation or set-off made against the revenues of any government, state or municipal: Dillon on Municipal Corporations, vol. 2, p. 991 ; Pittsburg v. Mc-Knight, 91 Pa. 202 ; Pittsburg v. Harrison, 91 Pa. 206.

A municipal corporation cannot be made a garnishee nor can public moneys held by any one in an official capacity be made the subject of attachments : Erie v. Knapp, 29 Pa. 173 ; Buckley v. Eckert, 3 Pa. 368.

*W. F. Beyer* and *A. F. Hostetter*, *Thomas Whitson* with them, for appellee.—It is admitted that the money here in controversy was actually paid by applicants for license within the City of Lancaster to S. S. Martin. On the construction here asked, Mr. Martin had no more claim or right to receive this money than any other citizen of the county, and when the applicants paid it to him the payment was not made to him as in any legal sense a representative of the city ; and in consequence no claim or equity for these moneys arose in favor of the city.

We contend that the plain and reasonable intention of the legislature in the act of 1891 clearly expressed was:

1. To fix the amount of license to be paid by applicants in cities, boroughs and townships respectively.

2. To direct that all applicants for license should in the first instance pay the whole fee into the treasury of the county, whose courts and officers grant and deliver the licenses.

3. That the other parties entitled to share then look to the county and that it through its treasurer make distribution, paying to the cities, boroughs and townships their respective portions : Schuylkill Co. v. Com., 36 Pa. 524 ; Com. v. Phila., 157 Pa. 543.

The county has a right to intervene and an action at law would be the proper proceeding.

The county has a right to hold these moneys and appropriate them towards its judgment.

The argument that we are diverting municipal revenues is unsound.

The right to set off a penal judgment is undoubted. Courts always avoid circuity of action.

A judgment is a sufficient voucher and as high authority as any appropriation by councils : Monaghan v. Philadelphia, 28 Pa. 209 ; see also Purdon's Digest, 668, pl. 1 ; Filbert v. Hawk, 8 Watts, 444.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895 :

The duties imposed upon county treasurers by the license laws of the commonwealth are additional and special. The price of the license is received for such uses and purposes as the law provides. If it is received for the use of the county it becomes a part of the money of the county in the hands of the treasurer and is paid out on the orders or warrants of the county commissioners. If it is received for the use of the state it is the money of the state, for which the receiving officer is primarily liable. If it is received for the use of a city, borough, township or school district, it is the money of the municipality entitled to receive it for its own use, and it is the duty of the receiving officer to pay to the owner. Such moneys do not become county moneys because they are in the custody of the county treasurer, nor is the custody of the treasurer necessarily that of the county. In the case now before us the act of June 9, 1891, P. L. 248, provides, inter alia, as follows : " In cities the sum of one hundred dollars, in boroughs and townships one fifth of the amount of license, shall be paid to the

treasurers of the respective counties for the use of the counties, and the balance shall be paid to the treasurer of the respective cities, boroughs and townships for their respective use." If this act stood alone, a payment, by the persons to whom the licenses were granted, to the treasurers of the respective county, city, borough and township entitled to a share of the license money, of so much thereof as each was entitled to receive, would have been a good payment. But the act of May 18, 1887, and several earlier statutes, had made the county treasurer the proper person to receive the price of the license, whoever might be entitled to the ultimate benefit of it.

Assuming, as I think we must, the continuing force of these earlier statutes, as far as this subject is concerned, the payment of the price of their licenses was properly made by those to whom licenses to sell liquors were granted in Lancaster county, to the county treasurer as the designated receiver. The duty which but for these earlier statutes would have fallen on the applicant, must now fall upon the holder of the money ; and it becomes his duty to carry out the mandate of the act of 1891 that " the balance shall be paid to the treasurer of the respective cities, boroughs and townships for their respective use." The balance is not county money in any sense. The county commissioners have no control over it. They cannot abrogate or modify in any degree the duties of the county treasurer as the statutory receiver of the license money ; nor is their order or warrant an indispensable voucher for him. He may upon the settlement of his accounts with the county auditors make proof in any competent way of the payment of the money he holds for others by the receipts, properly executed, of those entitled to receive the money. The mistake of the learned judge of the court below was in treating the license fees as indistinguishable from other county moneys. He states his own view of the situation thus : " The county treasurer, having paid the money into the county treasury for the use of the county, was no longer liable to a suit at law or subject to a writ of mandamus therefor, or on account thereof." But the county treasurer had power to pay into the county treasury for the use of the county only one hundred dollars out of the price of each license. As to the other four hundred dollars the statutory direction was " the balance shall be paid to the treasurer of the respective cities,

boroughs, and townships for their respective use." The county has no interest in any part of the license money except that part which the statute directs shall be for its use. The treasurer has no power to pay the balance into the county treasury for the use of the county, but is bound to credit it to the account of the owner, and pay it to the proper treasurer. This duty is imposed, not on the county, but on the county treasurer. He is the party primarily liable to pay, and he is necessarily subject to a mandamus to quicken, or to compel appropriate official action in relation thereto.

The county might be ultimately liable as the surety of its officer, and might be allowed to intervene whenever upon equitable principles a surety would be allowed to do so; but a surety under such circumstances must rest upon the equities of his principal and not upon some independent cause of action of his own. In this case we cannot see upon what theory the county was allowed to intervene except the mistaken one that the money had been paid by the treasurer "into the county treasury for the use of the county," so that it could only be withdrawn upon the warrant of the county commissioners; and that in consequence of such payment the treasurer "was no longer liable to a suit at law or subject to a writ of mandamus therefor, or on account thereof." As this theory cannot be sustained for the reasons already given, and as the county as the surety of its officer is asserting no equity growing out of that relation, no right to intervene is apparent and the order of Dec. 13, 1894, permitting the county to come in and answer, and thereafter to conduct the proceeding on behalf of the defendant, is reversed. The answer of the defendant Martin sets up the same line of defense as that made by the county, with the additional averment that the county commissioners had notified and required him to withhold the money claimed by the city because the county held a judgment against the city to which it proposed to appropriate the money in his hands. They might with equal propriety attempt to seize the moneys of any other debtor of the county in the hands of some third person by a simple notice not to pay over. They have no lien on the money because of the relation of debtor and creditor; they acquire no lien by their notice; their notice is therefore no defense to the person who holds their debtor's

money, when he is called upon to pay it over to him to whom it belongs. That is the situation here. It follows that the demurrer should have been sustained and a writ of mandamus awarded. The judgment overruling the demurrer and permitting the defendant to go without day is now reversed and judgment is entered on the demurrer in favor of the plaintiff.

The record is remitted and a procedendo awarded.