## RIVERTON VALLEY DRAINAGE DIST. v. BOARD OF COUNTY COM'RS. OF FREMONT COUNTY, ET AL.

(No. 2060; December 23, 1937; 74 Pac. (2d) 871)

338

For the appellants, there was a brief and an oral argument by *H. S. Harnsberger* of Lander.

For the respondent, there was a brief and an oral argument by *F. B. Sheldon, Jr.* of Riverton.

BLUME, Chief Justice.

This action was brought by the Riverton Valley Drainage District, plaintiff, against the Board of County Commissioners of Fremont County and its Treasurer, to recover the sum of $2199.16 on account of penalty and interest collected on drainage taxes of the plaintiff district. It is agreed that that sum was in fact collected and was paid into the general fund of the county. The court found for plaintiff, entering a general judgment in its favor for $858.90, and directed that the sum of $1340.26 be paid into its bond and interest fund. From that judgment the defendants have appealed. Section 122-866, R. S. 1931, in so far as relevant in this case, reads as follows:

"The revenue laws of this state for the collecting of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this article, including the payment of interest and enforcement of penalties and forfeitures for delinquent taxes. All penalties and interest on assessments of a drainage district collected by the county treasurer shall be the property of such district, and all interest and penalties collected on assessments of such district lev-

ied for purposes other than bonded indebtedness shall be paid to the treasurer of the district levying such assessment, such payments to be made on or before the fifth day of the month following the date of such collection."

Section 122-887 provides as follows:

"All drainage assessments shall be collected by the same officer and in the same manner and at the same time as state and county taxes are collected and when collected shall be paid to the treasurer of the district, except such assessments, together with interest, penalty and costs thereon, as are collected upon assessments levied for the payment of principal and interest of bonded indebtedness of said district, which funds shall be retained by the county treasurer of the county in which such district is organized, and the principal and interest of all bonded indebtedness of such district shall be paid by such county treasurer from such fund, at the place of payment designated in said bonds and interest coupons; provided, that when all bonded indebtedness of any drainage district is fully paid and retired, such funds remaining in the hands of the county treasurer shall be paid to the treasurer of such district, for the use of the district. The commissioners of any drainage district may elect the treasurer of the county having jurisdiction of such district, treasurer of such district."

1. Counsel for the appellants contends that all penalty and interest collected belong to the county, and not to the drainage district. He argues that the money collected thereon is not needed by the drainage district; that the principal of the assessments takes care of its bonded indebtedness as well as its general expenses; that the legislature has no right or power to permit the levy of an assessment over and above the needs of the district. Even if it is true, however, that the money mentioned is not needed by the district, it does not follow that it belongs to the county. The statute provides otherwise. It gives the money to the district. The statute governs, unless it is in contravention of the

constitution. And even if it is, appellants are in no position to raise the point. That has been expressly decided by the Supreme Court of Montana, in a case involving the question of money directed by law to be paid over by a county treasurer to a city. It said, in the case of State v. McFarlan, 78 Mont. 156, 252 Pac. 805, 808, as follows:

"The defendant is not in a position to assert that the foregoing statutes are, or that any one of them is, unconstitutional. Admittedly, he collected the taxes and, having done so, it was his duty to pay them to the city treasurer. Town of White Sulphur Springs v. Pierce, 21 Mont. 130, 53 P. 103. The taxpayer who paid the taxes, voluntarily it must be assumed, is not complaining. The taxes were paid for the benefit of the city, not for the county or the defendant treasurer. So upon this attempted defense the treasurer will not be heard. Board of Commissioners of Meagher County v. Gardner, 18 Mont. 110, 44 P. 407; Adams v. Saunders, 89 Miss. 784, 42 So. 602, 119 Am. St. Rep. 720, 11 Ann. Cas. 327, and exhaustive note. Moreover, one who is neither injured nor jeopardized by the operation of a statute cannot challenge its constitutionality. State v. Vettere, 77 Mont. 66, 249 P. 666."

It is further contended that even if the interest and penalty belong to the district, the county of Fremont was compelled to hire extra help in collecting the drainage taxes, penalty and interest, at an outlay of $1081.34, as shown by the evidence, and that in any event this sum should have been deducted from the amount collected. He argues that it is unjust that the county should be compelled to hire such extra help for the purpose mentioned; that it cannot be presumed that the legislature intended such injustice; that the statute, accordingly, should be construed as implying that such extra expense should be deducted. Counsel, however, conceded that the statute is plain in providing that the penalty and interest belong to the drainage district, and in view of that fact it is difficult to see

how this court can construe it as containing any implied provision. In 61 C. J. 1528 it is stated that "unless otherwise directed, interest, penalty and costs collected on delinquent taxes follow the tax, and go to the state, county or city, according as the one or the other is entitled to the tax itself." That has been held to be true in case of a drainage or similar district. State ex rel Drainage District v. Newby, Treasurer, (Wis.) 171 N. W. 953; Maricopa etc. Conservation Dist. v. Ward, County Treasurer, (Ariz.) 281 Pac. 465. And applying the rule, it has been held that if the statute makes no provision for charges for services rendered in collecting the money, none can be made. Mineral School Dist. v. Pennington, 19 S. D. 602, 104 N. W. 270; Kitanning Borough v. Mast, 15 Pa. Super. Ct. 51; Fargo v. Cass County, 35 S. D. 372, 160 N. W. 76. In the first mentioned case the county was compelled to expend money for attorneys' fees in collecting taxes for a school district. It attempted to charge the district with this outlay. The court held that it was not entitled to do so, saying in part:

"The duty of the county treasurer to pay over the amount collected to the school district being imposed by law, he could not legally retain any portion thereof from such district in the absence of any statutory authority authorizing him to do so. The court was clearly right, therefore, in its conclusions of law that the school district was entitled to recover the amount so retained by the county treasurer. The money collected belonged to the school district, and there being no statutory authority for retaining any portion of it for expenses of litigation, the county treasurer was required to pay it over to the school district treasurer; and the same having been retained in the county treasury, the county was clearly liable therefore. The contention of the appellant that the county had an equitable right to retain the amount cannot be maintained, as it could only retain such sum as it was authorized to do so by law."

Counsel for appellants further contends that the leg-

islature has no power to compel the county to bear the burden of collecting the taxes of the district. Counsel has not pointed out any provision of our constitution which makes the statutes in question invalid. All acts of the legislature not in contravention of the Constitution have the force of law, and this court will not ordinarily consider the constitutionality of a statute unless the specific provision which is claimed to be violated is pointed out. Cuthbertson v. Coal Co., 50 Wyo. 441, 62 P. (2d) 311; Salt Creek Trans. Co. v. Pub. Serv. Comm., 37 Wyo. 488, 263 Pac. 621; Taxpayers' League v. McPherson, 49 Wyo. 251, 54 P. (2d) 897; Sch. Dist. No. 14 v. Sch. Dist. No. 21, 48 Wyo. 511, 49 P. (2d) 682. Hence, whether or not the law in question is in conflict with any specific provision or provisions of the Constitution must be reserved for future consideration. However, a number of authorities, while discussing the general policy of the law or the power of the legislature in this connection, shed light on the question of an implied provision for compensating the county, and it will, accordingly, not be amiss to examine some of them. In doing so we should bear in mind the fact that a drainage district bears at least a portion of the county's expenses, and that it is a district created for the public good. It is treated as a public or quasi-public corporation. 19 C. J. 615. Expenses incurred on its behalf would, we think, come within a public, as distinguished from a private, purpose. In the case of State ex rel. Port of Seattle v. Gaines, County Treasurer, 109 Wash. 196, 186 Pac. 257, it appears that the county treasurer was by law directed to collect funds of a port district. As in the case at bar, no provision was made for compensating the county treasurer or the county. The court on that point said:

"The port district is a public corporation, and there cannot be any question but what the legislature had a

perfect right to require its funds to be deposited with and kept by the county treasurer. The act nowhere undertakes to compensate the county for the expense of handling the port funds, and it may have been that the legislature had in mind that it would so compensate the county by allowing it to have the benefit of any interest it might collect on the port funds. In any event, the whole matter was within the power and discretion of the legislature."

In the case of State v. McFarlan, supra, the court said:

"In collecting city taxes, the county treasurer does so as agent for the city. Nowhere, so far as we are aware, is there any provision for his remuneration for his services in collecting taxes, interest, and penalties due the city. Nor need there be. He is a public officer, paid by the public ,and there can be no doubt of the power of the legislature to include in his duties that of collecting and paying over to a city in his county taxes caused to be levied in pursuance of law by the city authorities."

In the case of McFarlin v. Board of Drainage Commissioners, 153 Ga. 766, 113 S. E. 447, the law not alone made no provision for compensating the treasurer of the county, but on the contrary it provided that the tax collector should receive no commission for handling the drainage fund, or for performing any duty imposed upon him under the drainage act. It was contended that in view of this provision the law compelling the collector to act for and on behalf of the district should be considered repealed. The court said on that point:

"We cannot agree to the above contention. Whenever a public officer accepts such office and enters upon the discharge of his duties as such, he takes it with all the burdens that are placed or may be placed upon such office according to law; and if he retains the office and undertakes to perform the duties thereof for a fixed compensation, he does so with the possibility that such

duties may be increased or diminished. Twiggs v. Wingfield, 147 Ga. 790, 95 S. E. 711, L. R. A. 1918E, 757. Whatever the rule may be with reference to withdrawing all, or substantially all, of the emoluments of an office, as being practically an abolition of the office itself, we are of the opinion that such rule has no application to a case like the present, where there is nothing to indicate that all of the emoluments of the office of county treasurer have been withdrawn from that official, but only a portion; and independently of the compensation which he may have received as ex officio treasurer of the drainage district, he is still entitled to his compensation for acting as treasurer of the county of Franklin as such."

In the case of Board of Commissioners v. Irrigation District, 56 Colo. 515, 139 Pac. 546, the county treasurer was by law required to collect the taxes of the irrigation district, in the same manner as other taxes. The act in force at that time (1907) provided that the board of the irrigation district should pay to the county from $25 to $100 per annum. It was contended that such compensation was too small, and that "to place the entire burden upon the county to pay for work occasioned by and beneficial to only a part of the county is the taking for private purposes of the property of taxpayers not in the district, contrary to the constitution." The court, however, held that it could not say that the act was invalid. Reference was made to the act of 1895, which had expressly provided that no fee whatever should be charged for collecting the taxes, and speaking of that act, the court said:

"In the act of 1895 no fee is charged to the district, and the extra expense, if any, occasioned to the county by the irrigation district is borne apparently by the entire county—those within the irrigation district as well as those without it. The General Assembly might well have thought that there would be such an advance in the amount and value of taxable property in an irrigation district occasioned by the irrigation of lands

that the total valuation of the county would be so much enlarged that the extra expense, if any, occasioned by the increase of work in the treasurer's office would be more than met without increase of levy, and that in this way taxpayers outside of the district would in reality pay nothing on account of the extra expense. Who can say that this would not be so?"

In the case of State ex rel. Olmstead, Mayor, v. Mudgett, County Treasurer, 21 Wash. 99, 57 Pac. 351, the court said:

"The contention of appellant here is that the act of March 10, 1897 (Laws 1897, p. 77), in so far as it authorizes the legislative body of a city of the first class to certify its assessments for street improvements to the county treasurer for collection, and directs the county treasurer to collect the same, is unconstitutional and void, for the reason that it provides no method for reimbursing the county for the cost the county will be compelled to expend in collecting such assessments. The particular provision of the state constitution pointed out by the appellant as being violated by the act in question is section 2, art. 7. He argues that the effect of the act is to compel the general taxpayer of the county, whose property is not benefited by the special improvement, to bear the cost of collecting these assessments, and thus taxation is rendered unequal and ununiform, within the meaning of the section cited. We are unable to agree with the appellant in his construction of this provision of the constitution. This section was not intended as a restriction upon the power of the legislature to direct the purposes to which money collected by taxation might be expended, but was intended to secure equality and uniformity in the mode and rate of assessment and taxation,—the means employed to supply the treasury."

In the case of The Best Foods, Inc., v. Christensen, State Treasurer, 75 Utah 392, 285 Pac. 1001, at 1004, the court said:

"When a revenue measure is enacted into law, provision must be made for the collection of the new revenue thus provided for. It has always been the policy

of this state to intrust, for the most part, the assessment and collection of taxes for state and municipal purposes to county officers. That the state Legislature may cast the burden of collecting state and municipal taxes upon officers of cities, towns, or counties without offending against any of the provisions of our state Constitution is not open to serious doubt. No contention is made, or can well be made, to the contrary. The Legislature may grant or withhold compensation to a municipality to reimburse it for the cost of assessing and collecting taxes for purposes other than its own."

See further State ex rel. v. St. Louis County Court, 34 Mo. 546; People v. Power, 25 Ill. 187 (169) ; State ex rel. v. Graham, 16 Nebr. 74, and Board v. City of Springfield, 63 Ill. 66. See also Commonwealth ex rel. v. Martin, Treasurer, 170 Pa. 118, 32 Atl. 624; City of Fremont v. Lodge County, (Nebr.) 266 N. W. 771; County of Stark v. County of Henry, 326 Ill. 535, 168 N. E. 116, 54 A. L. R. 777; Digest, "Counties," Section 24; 15 C. J. 581.

It appears, accordingly, that in a number of other states, the legislature thought fit to enact statutes of similar import as the statutes in question here, without providing that the county should be reimbursed for services performed by its treasurer on behalf of an outside public or quasi-public corporation. Courts have not thought that strange, and have not read any implied provision into the law. Nor do we see, particularly in view of the decisions cited, why we should do so in this case, and thus do violence to the language used. The legislature saw fit to compensate the county for collecting city taxes. Sec. 115-1005, Rev. St. 1931. That was in 1913. The drainage act in question was passed in 1923. Hence it would seem that, in making no provision for compensating the county for any extra expense in collecting drainage taxes, it acted deliberately.

From what we have said, it follows, we think, that

the judgment of the trial court should be, and is hereby, affirmed. It might be said in passing that counsel for the appellants contended on oral argument that the judgment includes the amount of money which the county paid out for advertising tax sales and which it subsequently collected from the taxpayers. The statute makes no provision that such money should be turned over to the drainage district, and if it was included in the judgment herein, it would be merely a clerical error which could be corrected at any time.

*Affirmed.*

RINER and KIMBALL, JJ., concur.