DARREL HANSON, *Plaintiff,*

vs.

THE TOWN OF GREYBULL, WYOMING, A Municipal Corporation; C. H. CHRISTENSEN, Mayor; FRED LUDERMAN, G. W. WILLIAMS and GEORGE M. CLEMENT, members of the Town Council of said Municipal Corporation; and CLIFFORD LENNINGER, Town Clerk of the Town of Greybull, Wyoming, a Municipal Corporation,

*Defendants.*

(No. 2382; July 28th, 1947; 183 Pac. (2d) 393.)

468

469

For the plaintiff there was a brief by S. W. Davis of Greybull, Wyoming.

For the defendants there was a brief by J. O. Spangler of Greybull, Wyoming.

There was a brief by Noel Morgan of Worland, Wyoming, amicus curiae, in behalf of the Town of Worland.

470

## OPINION

RINER, Chief Justice.

This case comes before the court upon certain constitutional questions reserved and transmitted for our consideration by an order made by the presiding district judge of Big Horn County, Wyoming pursuant to the provisions of Article 55 of Chapter 3, Wyoming Compiled Statutes, 1945.

The record submitted and upon which these questions are said to arise is as follows:

One Darrel Hanson as Plaintiff on June 5, 1947 brought an action in the district court of Big Horn County against the Town of Greybull, Wyoming, a municipal corporation, the mayor thereof, three members of the town council of that corporation, and its town clerk, as defendants. The parties will be hereinafter for convenience usually mentioned, Darrel Hanson as the "plaintiff", the Town of Greybull as the

"town" and the remaining defendants as the "town officials". Collectively all the defendants will be so designated.

Plaintiff's petition briefly reviewed in substance alleges so far as it concerns the constitutional questions submitted, that plaintiff is a citizen and elector of said town, is the owner of real and personal property on the town's assessment roll and that he brings the action for himself and all other similarly situated; that the town is incorporated as a municipal corporation under Wyoming law and the other defendants are respectively, the mayor, members of the town council and the town clerk; that on June 2, 1947 a proposal to issue bonds of said town in the amount of $20,000 to acquire, equip and improve a municipal airport was submitted to the town electorate and carried, authorizing the town officials to issue said bonds; that pursuant to a resolution adopted by the town, copy of which is attached to the petition, said officials threaten and propose to advertise, execute, sell and deliver said bonds as thus authorized unless restrained by the district court, all to plaintiff's damage; that said bonds are being issued pursuant to Chapter 29, Article 2401 (Chapter 29, Article 24, Section 2401) Wyoming Compiled Statutes, 1945 as amended and re-enacted by Chapter 123 of the Session Laws of Wyoming, 1947, the first sentence thereof reading:

"In addition to other powers conferred upon them by law, any incorporated city or town in the State of Wyoming is hereby authorized to borrow money and issue the coupon bonds of such city or town in any amount not exceeding at any one time, four per cent (4%) of the assessed valuation of such city or town for the purpose of acquiring, leasing, purchasing, equipping, developing, improving or enlarging municipal airports, landing fields or other air navigation facilities.";

that the assessed value of the taxable property of said town is slightly in excess of $1,000,000; that the town

has no outstanding indebtedness except a stated amount for supplying water to the municipality; that defendants are attempting to issue these bonds in amount approximately two per centum of the assessed value of the taxable property in said town; that said Chapter 29, Article 2401, Wyoming Compiled Statutes, 1945 as amended aforesaid is illegal and unconstitutional in its entirety because in violation of Section 5, Article XVI of the Constitution of Wyoming which provides in part:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein:",

said statute authorizing the creation of an indebtedness exceeding 2 per centum of the assessed value of the taxable property in said town; that Chapter 29, Article 24, Section 2401 of Wyoming Compiled Statutes, 1945 therefore remains unchanged by Chapter 123 aforesaid so that an indebtedness of not more than 1 per centum of the assessed valuation of said property in the town can be created thereby; that plaintiff's rights are affected by said Chapter 123, the resolution of the town aforesaid and by the threatened action of the defendants as recited above and he seeks a declaratory judgment made and entered and that the court enjoin the defendants from incurring any indebtedness for airport purposes in excess of 1 per centum of the assessed valuation of the property in said town.

To this petition the defendants other than the town filed a general demurrer while the town itself filed an answer. That pleading as it concerns the constitutional questions here involved in substance admits the allegations of plaintiff's petition except that it denies that the plaintiff and others similarly situated will be damaged by the proposed bond issue of the town as alleged

in plaintiff's pleading; that the defendant town admits that Chapter 123 of the Session Laws of Wyoming, 1947 violates Section 5, Article XVI, Wyoming Constitution and in part is illegal and void but alleges that said statute is not unconstitutional in its entirety but is valid as a constitutional grant of power to Wyoming cities and towns to create an indebtedness in an amount not exceeding 2 per centum of the assessed valuation of such city or town for acquiring, leasing, purchasing, equipping, developing, improving, or enlarging municipal airports, landing fields or other air navigation facilities; that this defendant does not propose to issue airport bonds as alleged in plaintiff's petition in excess of 2 per centum of the assessed valuation of said town as permitted by Section 5, Article XVI of the Wyoming Constitution aforesaid; that the issuance of said airport bonds in the amount of $20,000 is the only indebtedness of said town which is limited by the 2 per centum provision of said Section 5 of Article XVI of the Wyoming Constitution; that unless restrained, the bonds of the said town will be issued in the amount of $20,000 and plaintiff's property will be subject to assessments and levies to pay same. It is prayed that Chapter 123 aforesaid be held constitutional to the extent of authorizing a town indebtedness of not to exceed 2 per centum of the assessed valuation of said town for the above mentioned purposes and that plaintiff take nothing by his petition.

Plaintiff filed a reply denying the new matter set forth in the answer but admitted that defendant town does not propose to issue airport bonds to exceed 2 per centum of said town's assessed valuation.

Thereafter upon motion of the plaintiff that certain reserved constitutional questions arising upon this record be ordered transmitted by the district court of Big Horn County to this court and upon stipulation of the parties that:

"Order may be made and entered by this Court reserving and sending to the Supreme Court of the State of Wyoming the constitutional questions which have arisen herein and as are set forth in the Motion of the Plaintiff heretofore filed herein; and the parties do further hereby waive any formalities, notices and hearings and agree that said case may be sent to the said Supreme Court at the earliest possible date, and that a hearing may be had therein as soon as the Supreme Court may deem proper."

The following constitutional questions were submitted to this court, viz:

"1. Is Chapter 29, article 2401, WYOMING COMPILED STATUTES 1945, As Amended and re-enacted by Chapter 123, SESSION LAWS OF WYOMING 1947, when read in connection with Section 5, article XVI of the Constitution of the State of Wyoming, a valid and constitutional grant of power to incorporated cities and towns in the State of Wyoming to borrow money and issue the coupon bonds of such city or town in an amount not exceeding four (4%) per cent of the assessed valuation of such city or town for the purpose of acquiring, leasing, purchasing, equipping, developing, improving or enlarging municipal airports, landing fields or other air navigation facilities?

"2. Is Chapter 29, article 2401, WYOMING COMPILED STATUTES 1945, As Amended and re-enacted by Chapter 123, SESSION LAWS OF WYOMING 1947, when read in connection with Section 5, article XVI of the Constitution of the State of Wyoming, a valid and constitutional grant of power to incorporated cities and towns in the State of Wyoming to borrow money and issue the coupon bonds of such city or town in an amount not exceednig two (2%) per cent of the assessed valuation of such city or town for the purpose of acquiring, leasing, purchasing, equipping, developing, improving or enlarging municipal airports, landing fields or other air navigation facilities?

"3. Is Chapter 29, article 2401, WYOMING COMPILED STATUTES 1945, As Amended and re-enacted by Chapter 123, SESSION LAWS OF WYOMING 1947, when read in connection with Section 5, article XVI of the Constitution of the State of Wyoming, a

valid and constitutional grant of power to incorporated cities and towns in the State of Wyoming to borrow money and issue the coupon bonds of such city or town in an amount not exceeding one (1%) per cent of the assessed valuation of such city or town for the purpose of acquiring, leasing, purchasing, equipping, developing, improving or enlarging municipal airports, landing fields or other air navigation facilities?

"4. Is Chapter 29, Article 2401, WYOMING COMPILED STATUTES 1945, As Amended and re-enacted by Chapter 123, SESSION LAWS OF WYOMING, 1947, when read in connection with Section 5, article XVI of the Constitution of the State of Wyoming, void and unconstitutional in its entirety?

"5. Is the Town of Greybull authorized by the Constitution and laws of the State of Wyoming to issue its bonds and thereby to become indebted in an amount not in excess of two (2%) per cent of its assessed valuation for the purpose of acquiring, equipping, developing and improving a municipal airport?

"6. Is Chapter 29, article 2401 of the WYOMING COMPILED STATUTES 1945, As Amended and re-enacted by Chapter 123, SESSION LAWS OF WYOMING 1947, when read in connection with Section 5, article XVI of the Constitution of the State of Wyoming, contrary to, and in violation of, any other provision of the Constitution of the State of Wyoming not specifically enumerated herein?"

The full text of Section 5 of Article XVI of the Wyoming Constitution reads:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; provided, however, that any city, town or village may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of building sewerage therein; and provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable pro-

perty therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school buildings therein; debts contracted for supplying water to such city or town are excepted from the operation of this section."

The remaining portion of Chapter 123 Session Laws of Wyoming 1947 after the first sentence thereof above quoted in the review of plaintiff's petition provides for the bond denominations to be used, issuance of bonds, interest rate, maturities thereof, redemption period, and the selling price. It forbids issuance of such bonds until the proposal therefore has been submitted upon specified notice to the qualified electors of the city or town desiring to issue the bonds. Provision is then made for each submission after due notice has been given as thus required and the terms of the notice. Finally, the contents of the ballots to be used at such election are set forth. Section 2401, Article 24 of Chapter 29 of Wyoming Compiled Statutes, 1945, is identical with Chapter 123 aforesaid except that it provided a limit of not to exceed 1 per centum on said bonded indebtedness which the amended law now appearing as Chapter 123 aforesaid undertook to increase to 4 per centum.

Succinctly the questions to be resolved, it will be observed, are whether Chapter 123 of Session Laws of Wyoming, 1947 is constitutional to the extent of authorizing indebtedness not to exceed 2 per centum of the "assessed value of the taxable property" in said town or whether the entire chapter must fail as unconstitutional thereby leaving Section 2401 of Article 24, Chapter 29, Wyoming Compiled Statutes, 1945 in force with a debt limit of but 1 per centum for the purposes named. In passing we may note that the language quoted above from Chapter 123 Session Laws of Wyoming 1947 and reading: "not exceeding at any one time", might be misleading and seem to authorize the

creation of indebtedness of the stated percentage for other times regardless of the fact that the statutory percentage limit had been attained. But to so read the statute would be to disregard the elementary principle that it will not be presumed that the legislature intended to enact a law in violation of constitutional restrictions. 11 Am. Juris. 790, § 129, 817 § 140. The words "at any one time" could very well have been omitted.

This court has referred in times past to some of the legal principles which may be properly invoked in answering the questions submitted at this time and it may be of use to recall that in State vs. Sheldon, 29 Wyo. 233, 213 Pac. 92 where it was held that an action providing for the city manager form of government which by its terms applied to all cities and towns with a population of more than 1,000 was invalid as to some and valid as to others to which it could constitutionally apply, this was said:

"To summarize with some repetition we hold the act in question void in so far as it applies to towns organized and existing under Chapter 125, Wyo. C. S. 1920; in so far as it attempts to give authority to appoint a city manager who is not a qualified elector of the state, and in so far as it delegates to the city commission or council authority to fix salaries of municipal officers. As we think the parts of the statute which are unconstitutional can be separated from the remainder, and that we cannot presume that the legislature, if properly advised, would not have passed the law with the unconstitutional parts eliminated, we hold that the remaining parts of the act are not void for any reason called to our attention by the reserved questions. Claiming that the court should not thus decide that parts of the act are valid, counsel for respondent relies upon the rule stated in State v. Peterson, 27 Wyo. 185, 212, 194 Pac. 342, 350, that the law must be tested, not by what has been or can be done under it, but by what the law authorizes to be done under its provisions. We do not question this rule as applied in that case and in Sterret v. Young, 14 Wyo. 146, 82 Pac. 946, but we see

nothing in the rule to affect the duty of a court in proper cases, in accordance with the principles hereinbefore discussed, to uphold those parts of a law which do not authorize unconstitutional acts."

Also in State ex rel. Wyckoff vs. Ross, Governor, 31 Wyo. 500, 228 Pac. 636 where in connection with an application for a writ of prohibition it was contended that a certain statute was in conflict with stated constitutional restrictions, this language was employed:

"A statute clearly unconstitutional as to certain persons or things, but constitutional as to others, may be sustained as to the persons or things to which it may be applied without conflict with the constitution, if it be believed that the legislature would have enacted the statute with the unconstitutional parts eliminated. State v. Sheldon, 29 Wyo. 233; 213 Pac. 92; State v. Snyder (Wyo.) 219 Pac. 735. Counsel for relator concede the general principle that parts of a statute may be held unconstitutional and the remainder valid, where the objectionable part may be separated from the rest, but contend that the separability of the statute depends on the possibility of striking out certain words, phrases or sections so as to leave the valid part intact, and many authorities are cited in support of this contention, the cases particularly relied on being Ballard v. Mississippi Cotton Oil Co., 81 Miss 507, 34 So. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476 and Chicago, M. & St. P. R. Co. v. Westly, 178 Fed. 619, 102 C. C. A. 65, 47 L. R. A. (N. S.) 97. Without attempting to analyze these and other cases cited, we may say that to the extent that they appear to support the relator's contention, they do not conform to our conception of the duty of the court to carry out the legislative will so far as that may be done without transgressing the constitution. Cooley (Const. Lim.), supra, p. 250. The effect of relator's contention is that, if the legislature had mentioned all officers in the state by inserting a list of them, we might then strike from the list the officers to which the act could not apply, but, where all officers are mentioned by a general term, we cannot hold it applicable to some and not to others. This, we think, puts too much stress on a matter of form, and it should not be a question as to form, but as to power."

The authorities presently to be reviewed, will, we think, supply any additional legal rules necessary to be kept in mind in disposing of the matter at bar.

In Lee v. Tucker, 130 Ga. 43, 60 S. E. 164 it was held that the Legislative Act of 1878-9 p. 44 (Pol. Code 1895 §§ 391-394) was not entirely invalid due to its conflict with the State Constitution as to the number of votes required to remove or change a county site; that as the sole purpose of the act was to provide machinery to carry out the constitutional provision concerning county site changes through an election, by striking out the requirement of the law as to the necessary number of votes—which was larger than the constitution required—the constitutional number was therefore retained and the act remained complete in itself and capable of being carried out pursuant to the intent of the legislature. The court remarked:

"It was said by Chief Justice Bleckley in Irwin v. Gregory, 86 Ga. 605, 614, 13 S. E. 120, 122: 'It is a well-established principle that, unless the main purpose of a statute is affected by the unconstitutionality of a particular provision, the whole act is not thereby defeated.' In McPherson v. Blacker, 146 U. S. 1, 13 Sup. Ct. 3, 36 L. Ed. 869, it was held that a statute providing for the election of presidential electors, which conflicted with the act of Congress in that it fixed a different date for the electors to meet and give their vote, was not for that reason void. It was said on page 41 of 146 U. S., page 13 of 13 Sup. Ct. (36 L. Ed. 869) ; 'Striking out the day for the meeting which had otherwise been determined by Congress, the act remains complete in itself, and capable of being carried out in accordance with the legislative intent'."

In Langley vs. Cox, 135 Okla. 291, 275 Pac. 638, it was held that where a title to a legislative act restricted the operation thereof to a certain class and the body of the act included all classes, the act would be upheld to the extent of restricting it to the class named in the

title, under Section 57 of Article V of the Oklahoma Constitution which read in part:

"Every act of the legislature shall embrace but one subject which shall be clearly expressed in its title * * *".

Section 93 and 107 of the constitution of Kentucky authorized the general assembly to provide for the election or appointment of officers for a term "not exceeding four years". An act of the legislature (March 5, 1898) created a board of penitentiary commissioners and undertook to fix the terms of the three commissioners at two, four and six years respectively. It was held in Commissioners of Sinking Fund vs. George, 104 Ky. 260, 47 S. W. 779 that the fact that the statute fixed the term of one of the commissioners at six years instead of four would not invalidate the entire act but simply rendered the excess of the term of one commissioner void, vesting that official with a term of four years only. In reaching this conclusion, the court said:

"As the general assembly expressed a willingness that one of the commissioners should hold for two years longer than the constitution permits, it is certainly reasonable to conclude that it was the will of that body that the commissioners should hold for four years, as this term as necessarily included in the longer one which it fixed. Holding the act void in so far as it makes the term six years, instead of four, still the balance of the act is complete and enforceable. The purpose and intent of the general assembly, that the commissioners should manage and control the penitentiaries, can be effectuated by eliminating from the act that part which attempted to make terms six, instead of four years. If the constitution had expressly required that the terms of officers should be fixed at exactly four years, and the general assembly had fixed the terms of the commissioners, respectively, at one, two, and three years, then we could not hold that it was its intention that they should hold for terms of four years. In such state of case, the very fact that the legislature provided that the terms should be less than that fixed in the constitution would be a manifestation of an unwillingness of

the general assembly to create the offices and fix their terms at four years. It is different in this case. The general assembly has not only shown a willingness that the terms shall be as much as four years, but also that they shall be six. If the unconstitutional portion of an act can be stricken out, and that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, it must be sustained. When that part of the act which adds two years to the constitutional term of four years is rejected, there will be three commissioners, one of whom shall hold for a term of two years, and two for a term of four years each, and, in the language of the act, 'until their successors are elected and qualified.'"

Construing the statute thus would appear to be a permissable application of the maxim omne majus continent in se minimis (every greater contains in itself the less), i.e., where more is done than legally could be done, that portion of the statute for which there is authority can be held operative and valid and the law held void as to the residue. See State vs. Wright 62 Wyo. 112, 163 Pac. 2d 190, 197; Boyd vs. Huntington, 215 Cal. 473, 11 Pac. 2d 383, 385. Of course this principle can not always operate. If the statute is so worded that the void part is inseparably entangled with the rest of the act and it is clear that the legislature would not have passed it without the void part being treated as operative, the rule could not be invoked.

The facts and the law applied touching by analogy the point in which we are here interested, in the comparatively recent case of State vs. Loesch, 350 Mo. 989, 169 S. W. 2d 675 are stated in the opinion of the court thus:

"Appellant in its brief, contending the act to be unconstitutional, makes four separate attacks upon the article. We will dispose of these in the order as briefed. The first point as briefed reads as follows: 'The Planning and Zoning Act of 1941 violates Section 14 of Article IX of the Constitution of Missouri, Mo. R. S. A.,

in that it provides for the appointment of county officers for public convenience and provides for said officers a term of office exceeding four years.'

"Section 15349 does provide that the term of office of the commissioners shall be six years. The constitution, Section 14, Article IX, prohibits the creation of any term for county officers for more than four years. Respondents concede that this section does not harmonize with the constitution, but contend that that does not vitiate the balance of the zoning act. It will be noted that the legislature, by section 15364, declared that if any section or part thereof shall be held to be invalid such decision shall not affect the validity of the remaining portion of the law. The portion of section 15349 fixing the term of the commissioners at six years is unconstitutional as to the excess and we so hold. It does not follow, however, that the whole section is void. The legislature expressed. its intent that the whole act should not be held invalid even if a portion thereof should not meet approval. Such is a general rule. If the purpose for which an act has been passed can be accomplished without the portion held unconstitutional, the good portion will be permitted to stand, unless it is apparent that the legislature would not have enacted the law without the portion held bad. Cooley's Constitutional Limitations, 8 Ed., Vol. 1, pages 359 etc. Eliminating the six year term does not jeopardize the purposes for which the law was enacted, nor does it destroy the other provisions of section 15349. The legislature clearly indicated that the terms of office of the members of the commission should be for a definite number of years and that the terms should not expire at the same time. Note the language of section 15349: 'The term of each appointed member shall be six years or until his successor takes office, except that the terms shall be overlapping and that the respective terms of the members first appointed may be less than six years.'

"In 46 C. J. 965, § 101, we note the following: 'In case the legislature provides for a longer term than is permitted by the constitution, the act is ordinarily held to be valid as to the term permitted by the constitution, and void only as to the excess. * * *'

"A number of cases are cited as sustaining that rule". While as indicated in the decision just quoted from, the statute contained a provision incorporating a declaration by the legislature that if part of the law were declared invalid, such a ruling should not affect the validity of the remainder, nevertheless, as the court remarked, that is the "general rule" anyway. The legislative announcement embodied in the statute merely directed special attention to the rule.

In accord with the decisions referred to above is the case of Scott vs. Flowers, 61 Neb. 620, 85 N. W. 857. It was there held that Section 5, Article I, Chapter 75, Nebraska Compiled Statutes 1899 was valid to the extent that it authorized commitment to the State Industrial School of children under 16 years of age who through parental neglect were growing up "in mendicancy or crime", but invalid as authorizing children between the ages of 16 and 18 years to be so treated. Maintaining that view, reversing a previous opinion filed in the same case as well as the trial court's ruling on the question of law involved, the court finally concluded:

"The general rule upon the subject is that, where there is a conflict between an act of the legislature and the constitution of the state, the statute must yield to the extent of the repugnancy, but no further. State v. Stuht, 52 Neb. 209, 71 N. W. 941; East Kingston v. Towle, 48 N. H. 57; Railroad Co. v. Jones, 149 Ill. 361, 37 N. E. 247, 24 L. R. A. 141; McPherson v. Blacker, 92 Mich. 377, 52 N. W. 469, 16 L. R. A. 475; Grimes v. Eddy, 126 Mo. 168, 28 S. W. 756, 26 L. R. A. 638; Cooley, Const. Lim. (6th Ed.) pp. 210, 211; 23 Am. & Eng. Enc. Law (1st Ed.) 225. If, after striking out the unconstitutional part of the statute, the residue is intelligible, complete, and capable of execution, it will be upheld and enforced, except, of course, in cases where it is apparent that the rejected part was an inducement to the adoption of the remainder. In other words, the legislative will is, within constitutional limits, the law of the land, and, when expressed in ac-

cordance with established procedure, must be ascertained by the courts and made effective. In section 5 of the reform school law the legislature has given a clear expression of its will and purpose. It has in plain terms declared that all children under the age of 18 years, who shall be convicted in a court of record of any crime except murder or manslaughter, committed before the age of 18 years, or who, for want of proper parental care, are growing up in mendicancy or vagrancy, or are incorrigible, may, in the discretion of the court, be sent to the state industrial school for education, reformation, and safe-keeping. The legislature did not, as was shown in the former opinion, possess the power to authorize the commitment of children over the age of 16 years who have not been convicted of crime, and consequently the courts are without jurisdiction in such cases. The legislature has here clearly expressed its will, but it has gone too far; it has transcended the limits of its authority. It has in an unmistakable manner signified its purpose, not only to authorize the commitment to the reform school of certain children under the age of 16 years, but also children beyond that age who, although guiltless of crime, have evinced a criminal tendency and are without proper parental restraint. The legislature having declared its will, and its command to the courts being in part valid and in part void, the decisive question is, shall section 5 be given effect so far as it is in accord and agreement with the paramount law? It seems that both good sense and judicial authority require that the question should receive an affirmative answer."

Decisions which also would seem to be especially in point on the questions presented are Germania Savings Bank vs. Town of Darlington, 50 S. C. 337, 27 S. E. 846 and Dunn vs. City of Great Falls, 13 Mont. 58, 31 Pac. 1017.

In the Town of Darlington case supra, it was held that Act 1884, Section 29 (18 Statutes at Large, p. 923) as amended by Act 1889 (20 Statutes at Large, p. 503) which gave the town power to issue bonds in aid of railroads "to any amount" was not void because in conflict with the Constitution, Article IX, Section 17 pro-

viding that the bonded debt of any municipal corporation should not exceed 8 per centum of its assessed valuation; that a conflict in such case could be avoided by reading the constitutional limitation into the act as a qualification of the power conferred. So holding, the court after examining the pertinent statutory and constitutional provisions used this language:

"From this review of the several statutory provisions upon the subject, read in the light of the constitutional provisions above referred to, it is very manifest that the general assembly intended to invest the corporate authorities of the town of Darlington with authority to issue bonds in aid of railroads, and also with power to lay assessments on the taxable property within the corporate limits of the said town for the purpose of levying taxes thereon to raise money to pay the interest on such bonds. It is true that the act conferring the power to issue bonds does provide that the corporation may issue bonds in aid of railroads 'to any amount,' but, in order to avoid any conflict with the constitutional provision limiting the amount of the bonded debt of any town to 8 per centum of the assessed value of all the taxable property therein, that provision of the act must be qualified by such constitutional provision, and so read that the authority will be confined to the issue of bonds to any amount not exceeding the limit prescribed by the constitution, upon the well-settled principle that a statute will never be construed unconstitutional where it can be, in any possible way, reconciled with the provisions of the constitution. Fletcher v. Peck, 6 Cranch, 87; Butler v. Pennsylvania, 10 How., at page 415, besides many other authorities to the same effect, among which our own case of Pelzer v. Campbell, 15 S. C. 581, may be cited."

The Dunn case in similar vein ruled that the Act of March 5, 1891 of the Montana legislature which provided that cities of a certain class might incur bonded indebtedness to an amount not exceeding 4 per centum of their assessed valuation while in conflict with Article XIII, Section 6 of the Montana Constitution which permitted cities of that class to incur such indebted-

ness to the extent of only 3 per centum of the value of the taxable property therein, was void only to the extent of repugnancy in fixing the amount at 4 per centum instead of 3 per centum—i.e., the 1 per centum excess was void but the bonds were valid within the 3 per centum limit. Affirming a judgment of the lower court likewise so deciding, the opinion in the case concludes:

"From a consideration of the authorities cited we are of opinion that the statute of the state of Montana approved March 5, 1891, is only repugnant to, and in conflict with, section 6, art. 13, of the constitution of the state in so far as it fixes the amount of indebtedness the city of Great Falls might incur at 4 per cent. of the assessed valuation of the property included within the city limits instead of 3 per cent., as limited by said section of the constitution; that said section of the statute is not wholly in conflict with said section of the constitution, but only to the extent of the repugnancy above stated; that the city council of the city of Great Falls did not exceed its legal or constitutional authority or power by creating the debt in the manner set forth in the agreed statement of facts herein, or in the issue and sale of the bonds complained of by appellants, such debt being within the constitutional limit of 3 per cent. Jurisdiction of this case is entertained for the sole purpose of construing the question of the conflict between the statute mentioned herein and the constitution of the state, and not with any purpose of passing judicially upon the real or agreed facts of the constroversy.

"Judgment of the lower court is affirmed."

It is, we think, clear that by Chapter 123, Laws of Wyoming, 1947, the legislature of Wyoming intended to authorize cities or towns to increase their bonded indebtedness beyond the limitation of 1 per centum of the assessed valuation of such city or town as permitted by Article 24, Section 2401 of Chapter 29, Wyoming Compiled Statutes, 1945 hereinbefore mentioned. Through some oversight, the law making body fixed that increase at a figure which runs counter to the

mandatory requirements of Section 5 of Article XVI of the Wyoming Constitution. Reading the controlling constitutional limitation clause in conjunction with the 1947 statute (Chapter 123 supra) and under the authorities above reviewed, but one conclusion would appear possible, viz., that Chapter 123 aforesaid authorized the bonded indebtedness for airport purposes only to the extent of two (2%) per centum of the town's assessed valuation. With the wisdom of the town's thus exhausting its authority to incur indebtedness for the stated purposes at one time and so rendering it impossible to consider other needs of the municipality which might arise in the near future, no matter how urgent they might be, we have no concern in this present proceeding. That is something for the town and its officials to determine.

The case of Eliasberg Bros. Mercantile Co. vs. Grimes, 204 Ala. 492, 86 So. 56 might perhaps be regarded as announcing a rule contrary to the authorities cited above but upon examination we do not find it so. There the state's fundamental law provided in Constitution 1901, Section 214 that the legislature should not have the power to levy a greater rate of taxation than 65/100 of one per centum of the value of taxable property within the state. Concluding that the term "property" included incomes, it was held that the imposition of taxes upon incomes by the Revenue Act of 1919 was void in toto and not only void as to the levy in excess of 65/100 of one per centum when viewed under the constitutional provision to which reference has just been made and so deciding, the court said that:

"It is clear that the Legislature did not intend to tax all incomes alike, and whether they would have allowed any exemptions at all, or in what amounts, under a flat-rate levy of 65/100 of 1 per centum, and how they would have dealt with other features of the scheme, we cannot say except as a matter of the sheerest conjecture. If the matter were not complicated by these con-

siderations, it is possible that a way could be found, under the decision of Wiley v. Parmer, 14 Ala. 627, to save the levy pro tanto. In that case the point decided was that a nonresident taxpayer could recover the excess paid by him over and above the amount paid by residents, under an act levying a specific tax of $2 on slaves owned by nonresidents, while the slaves of residents were taxed only one half of that amount."

It would seem evident that the court was not at all satisfied that the legislature would have passed the Revenue Act drawn in question with that law's several exemptions if the tax rate therein was held to 65/100 of one per centum as the constitution of the state required. Chapter 123, Session Laws of Wyoming, 1947 now before us presents, as it seems to us, quite an entirely different situation. It may be noted, too, that there was dissent by the Chief Justice and also by an Associate Justice in the Grimes case just examined.

So we answer the questions propounded as set forth above as follows:

To question No. 1, our answer is "no".

To question No. 2, our answer is "yes". But it must be understood that at no time may the constitutional debt limit of two per centum be exceeded for indebtedness other than for sewerage and for supplying water to cities or towns.

Question No. 3 is substantially answered by the response to question No. 2 above.

To question No. 4, our answer is "no".

To question No. 5, our answer is "yes".

Question No. 6, we are not required to answer under the authority of our previous rulings in Salt Creek Transportation Co. vs. Public Service Commission, 37 Wyo. 488, 263 Pac. 621; State ex rel. Voiles vs. Johnson County High School, 43 Wyo. 494, 5 Pac. 255; Tax Payers' League of Carbon County vs. McPherson, 49 Wyo. 251, 54 Pac. 2d 897; Cuthbertson vs. Union Paci-

fic Coal Co., 50 Wyo. 441, 62 Pac. 2d 311; Riverton Valley Drainage District vs. Board of County Commissioners, 52 Wyo. 336, 74 Pac. 2d 871.

The cause will be remanded to the district court for further proceedings as the parties may be advised.

*Questions Answered in Part and Cause Remanded.*

BLUME, J., and KIMBALL, J., concur.